(17 App. Div. 165.)

### PEOPLE ex rel. BURBY v. HOWLAND et al.

### PEOPLE ex rel. RYAN v. BOARD OF SUP'RS OF WASHINGTON COUNTY.

(Supreme Court, Appellate Division, Third Department. May 5, 1897.)

1. CONSTITUTIONAL LAW—LEGISLATIVE POWERS—CREATION OF COURTS.

The "local inferior courts" which the legislature may create (Const. 1895, art. 6, § 18) are in addition to those specifically named in the constitution, and the legislature cannot create courts in place of, or substitutes for, those specifically named.

2. SAME—DEPRIVING OFFICER OF FEES.

The legislature has no power to deprive a constitutional officer of his fees by relieving him of the duties of his office, and providing that, if he exercises such duties, he shall be entitled to no compensation.

3. SAME—TERMS OF STATUTE.

Laws 1896, c. 22, § 2, creates the office of police justice in a certain town, with the same jurisdiction in criminal matters as justices of the peace. Section 19 provides that no peace officer in said town shall be compelled to execute any process issued or directed by the police justice, or any process issued by a justice of the peace in a criminal proceeding, and that he shall not be entitled to any compensation if he does. Section 20 provides that no justice of the peace shall be compelled to issue any process in any criminal proceeding within said town, and that he shall not be entitled to any fees if he does. *Held*, that such statute is unconstitutional, as, in effect, depriving justices of the peace of their constitutional jurisdiction.

4. SAME—POWER OF COURT TO ENFORCE PROCESS.

Such statute is unconstitutional, also, because it deprives constitutional courts of the power to enforce their process.

Appeal from special term, Washington county.

Applications for writs of mandamus by Alonzo A. Burby against Lansing H. Howland, George Scott, George Turner, Horace L. Rogers, Alonzo Burby, and Willard Robinson, composing the town board of the town of Ft. Edward, and by Thomas Ryan against the board of supervisors of Washington county, to compel defendants to audit relators' claims for fees. The applications were granted, and defendants appeal. Affirmed.

In 1896 the legislature passed what is known as chapter 22 of the Laws of that year, providing for the election of a police justice in the town of Ft. Edward. Section 2 of that chapter provides that such police justice "shall have the same jurisdiction in all criminal cases and proceedings as that now possessed by justices of the peace in such town." The act also provided for the election of one police officer in said town, who should "have and exercise all the powers and authority that constables of the town of Fort Edward now have or hereafter shall have with regard to all criminal matters and all proceedings of a criminal nature." Section 19 of the act provides: "That the sheriff, undersheriff, and deputy sheriffs or constables elected or appointed in the county of Washington or the village or town of Fort Edward, or any railroad officer or detective employed by any railroad company whose road extends into or runs through said county of Washington, shall not, as such, be compelled to serve within the town of Fort Edward, or village of Fort Edward, any summons, warrant, subpoena, commitment, order, notice, paper or process whatever, issued or directed by the police justice of said town, or village, or any justice of the peace residing or doing business therein, in execution of the laws of this state for the prevention of crime and the punishment of criminal offenders, or of the police laws or regulations of the state, or in any proceedings collateral to or connected with the execution of such general laws or regulations, or of the by-laws, rules, regulations or ordinances of said

town, or of said village." And it further provided that neither the county of Washington, nor any of the towns therein, nor the village of Ft. Edward be chargeable with or in any way liable to pay such officer any fees for services rendered or disbursements paid or incurred for the service of any such paper or process whatever. Section 20 provides that no justice of the peace of the town of Ft. Edward shall be compelled to issue any process of any kind for·any criminal offense within said town, and further provides that neither the county of Washington, nor any town therein, nor the village of Ft. Edward, shall be chargeable with or in any way liable to pay any such justice of the peace or police justice of such village any fees for any services rendered or·disbursements paid or incurred under or by virtue of any process in such criminal proceedings. The relator Burby was elected a justice of the peace of said town of Ft. Edward in March, 1894. The relator Ryan was appointed a deputy sheriff by the sheriff of Washington county on or about the 1st day of January, 1895, and was at the time of these proceedings, and now is, a deputy sheriff of said county, and also a duly-elected constable of the town of Ft. Edward. After the passage of chapter 22 of the Laws of 1896, above referred to, the relator Burby, as justice of the peace, issued warrants for the arrest of various alleged offenders against the law, and took examinations in the proceedings against them, made out commitments,—in short, performed the duties ordinarily performed by a justice of the peace in criminal proceedings,—in a number of cases, and thereafter rendered his bill for the fees for such services to the board of supervisors of Washington county. The relator Ryan served various processes in criminal proceedings, and also presented his bill for the ·fees therefor to the board of supervisors of Washington county. The bills of both relators were rejected. There is .no dispute but what the services set forth in the bills of both relators were actually rendered. There is no dispute but what the fees charged therefor are the regular fees allowed by law for such services. Their payment is refused upon the sole ground that under chapter 22 of the Laws of 1896 the services so rendered were purely voluntary, and did not entitle the relators to any fees for their rendition, and that they are not a lawful charge against the county of Washington, or any of the towns therein. The board of supervisors having refused to audit or allow such bills, each relator commenced a proceeding for a mandamus commanding and directing the board of supervisors to allow his bill. The special term made an order in each case directing the issuing of a mandamus against the defendants, from which orders the defendants appeal to this court. There is no dispute as to the facts in the case. The issue presented is entirely one of law. The cases were argued together as one case, and will be so discussed here.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

George Scott (Edgar T. Brackett, of counsel), for appellant town board.

R. O. Bascom (O. A. Dennis, of counsel), for appellant board of supervisors.

Edgar Hull (Lewis E. Carr, of counsel), for respondents.

HERRICK, J. The portions of chapter 22 of the Laws of 1896 which it is supposed deprive the relators of their right to compensation are found in sections 19 and 20, and it is only those sections that we need consider. The relator Burby was elected a justice of the peace of the town of Ft. Edward in 1894. That office is a constitutional office, and the term of office is fixed at four years. Const. art. 6, § 17. The same section of the constitution that provides for·the election and term of office of justices of the peace provides the manner in which their terms of office may be terminated; that is, their trial for misbehavior. When the con-

stitution has fixed the term of office, and prescribed the cause for which and the method by which an incumbent of such office may be removed, such cause and method are exclusive, and it is beyond the power of the legislature to remove or suspend him from office for any other cause, or in any other method. Lowe v. Com., 3 Metc. (Ky.) 237; Rathbone v. Wirth, 150 N. Y. 459–475, 45 N. E. 15; Black, Const. Law, 255. It will be conceded, I think, that the legislature does not possess the power to abolish a constitutional office. And I think it will also be conceded as a rule of construction that what the legislature cannot do directly it cannot do by indirection or evasion, no matter if that evasion be of the express terms or of the spirit and intent of the constitution. A written constitution would be of little avail as a practical and useful restraint upon the different departments of government if a literal reading only was to be given to it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts, palpably in evasion of its spirit, should be sustained as not repugnant to it. People v. Albertson, 55 N. Y. 50. The office of justice of the peace is one of the oldest known to the English law. Originally it was merely a peace office with no civil jurisdiction, but from a time long antedating our constitution it was an office with both civil and criminal jurisdiction, and had such jurisdiction at the time of the framing of our constitution. While having both civil and criminal jurisdiction, the most important functions exercised by the incumbents have been those of conservators of the peace and administrators of the criminal law. While the powers and duties of the office have been conferred by statute, yet those statutes date so far back in the history of English law that they may be said to be common-law powers, which were adopted by us from the English law together with the office of justice of the peace, and to be inseparable from the office, like the powers and duties of sheriff. The constitution does not, in express terms, say anything about the powers or duties of justices of the peace, but the framers of that instrument are presumed to have known the laws relating to them as they then existed, and to have provided for such officers with reference to their then existing powers and duties.

The power to create inferior local courts, conferred by article 6, § 18, of the constitution, is a power to create additional courts and magistrates to those specifically named in the constitution, but not a power to create courts or magistrates in place of, or as substitutes for, or in destruction of, those specifically named. "Such courts as are provided for in the constitution of the state can neither be abolished nor changed by the legislature. And whatever jurisdiction is intrusted to them by the constitution is beyond the reach of the legislature. It can neither be added to, diminished, nor modified. But the manner of its exercise may be regulated by statute." Black, Const. Law, 252. But under the guise of regulation the legislature has no power, either directly or indirectly, to take away any part of the power or authority of a court or magistrate created or recognized by the constitution.

It must be obvious that if the legislature can by one act take away the criminal jurisdiction of a justice of the peace, it may in another take away all civil jurisdiction, and thus destroy the office. A constitutional office cannot thus be destroyed. "The king may grant the office of a sheriff durante bene placito, and, although he may determine the office at his pleasure, yet he cannot determine it for part," etc. "Nor can he abridge the sheriff of anything incident or appurtenant to his office." 7 Bac. Abr. (Bouvier's Ed.) p. 310. While the legislature may regulate and add to or diminish the duties or fees of a constitutional office, it has no power to create a new office for the performance of such duties or the principal part of them. Warner v. People, 2 Denio, 272. "So it has been held that to change the name, or to divide up and partition the duties among several, or to take parts of the duties of several officers and combine them in one, will not be permitted." Board v. Heister, 37 N. Y. 661–666. Where a state constitution provides for the election of sheriffs, and fixes the term of office, etc., but does not define what powers, rights, and duties shall attach or belong to the office, the legislature has no power to take from the sheriff a part of the duties and functions usually appertaining to the office, and transfer them to another. People v. Keeler, 29 Hun, 175; State v. Brunst, 26 Wis. 412; King v. Hunter, 65 N. C. 603.

It is unnecessary to argue that the same principle that applies to the constitutional office of sheriff in the matters last referred to applies to the constitutional office of justice of the peace. But it is said that none of the powers of a justice of the peace of the town of Ft. Edward have been taken away; that this act merely relieves him from the duty of exercising his powers and the jurisdiction of his office in criminal cases, and provides if he does so voluntarily he shall not receive any compensation therefor. I doubt whether the legislature can relieve a constitutional officer of the obligation of discharging any of the duties or exercising the jurisdiction attached to the office. The powers and jurisdiction conferred upon the office of justice of the peace are not for the benefit of the incumbent, but for the public good, and when the occasion arises it is his duty to exercise them. Powers conferred for the public good and the duty of exercising them are coupled together, and cannot be severed. "An office consists in a right and a correspondent duty to execute a public or private trust and to take the emoluments belonging to it." 3 Kent, Comm. 454; People v. Nostrand, 46 N. Y. 375–381. But whether the legislature can or cannot relieve him of the duty, in a proper case, of exercising the powers of his office, I do not think it can deprive him of the right to his fees if he chooses to exercise such powers, notwithstanding the act of the legislature relieving him from the obligation to do so. Section 20 of article 6 of the constitution provides that "no judicial officer except justices of the peace shall receive to his own use any fees or perquisites of office." This, it seems to me, is not only a constitutional recognition that the compensation of justices of the peace was by fees, which, under the

principles above set forth, the legislature is bound to recognize, but is also an express permission to receive fees for their services; and that which the constitution expressly permits the legislature cannot, directly or indirectly, prohibit.

The framers of this act, while apparently recognizing the fact that the power and jurisdiction of a justice of the peace in criminal proceedings cannot be directly taken away, or their exercise prohibited, have, by indirection, attempted to utterly destroy the jurisdiction of the office in such matters by preventing its exercise. First the act gives the police justice all the powers of a justice of the peace; next it relieves the justices of the peace from all obligation to take any proceedings in criminal matters; then it provides that they shall not be paid for their services if they do take cognizance of any such cases. It has been held that merely depriving an officer of his fees was equivalent to depriving him of his office, and was unconstitutional. In Reid v. Smoulter, 128 Pa. St. 324, 18 Atl. 445, it was held that an act taking away the salary of the clerk of the court was unconstitutional; that, while the adjustment of the salary was within the power of the legislature, yet, as the clerk derived his office directly from the constitution, the legislature could not expel him from it by repealing the act fixing his salary. The act here proceeds still further. It provides that it shall not be the duty of any peace officer (I use that term to embrace all those mentioned in the statute) to serve any process issued by a justice of the peace of said town in execution of the criminal laws of the state, and that, if they do so, they shall receive no compensation therefor. We have here, then, a constitutional office, the most important of whose powers and functions are conferred upon another office created by the legislature; the incumbents of the constitutional office relieved from the duty of discharging the functions of that office, deprived of their pay for such services if they perform them, and with no officers to execute their process if they issue any. Does it need any argument to show that this is utterly destructive of the office? Can a public office be conceived of with no duties to be performed? And what becomes of a court or magistrate whose powers and jurisdiction have been conferred upon another, where the incumbents of the office have no duties to perform, who can receive no compensation if they exercise the functions of their office, and whose orders and process the public officers are under no obligation to obey or serve?

There is another aspect of this act that should be considered, not only because of its relation to the right of the relator Ryan to his fees for service, but also because of the dangerous principle involved. As we have heretofore seen, section 19 provides that no peace officer shall be obliged to serve any process issued by any justice of the peace of the town of Ft. Edward in any criminal proceeding. Courts and magistrates cannot execute their own process. The functions of their office cannot be performed except through the aid of executive officers. It has been well said of them that they "have neither force nor will, but merely judgment, and to be ultimately dependent upon the aid of the executive arm for the efficacious exercise of even this faculty." Com. v. Mann, 5 Watts & S. 403. From time immemorial the sheriff and

constables have been the executive officers to serve and enforce the process of courts and magistrates; and to relieve them of all obligation to do so, and prohibit their payment if they do, is to hamstring the court and leave it helpless. In providing for courts and the election of magistrates, the framers of the constitution must be presumed to have had in view the ordinary powers and functions of such courts and magistrates, and the manner in which they have been customarily exercised, and to have intended that they should continue to be so exercised; and to relieve those officers customarily charged with the duty of enforcing the process of the court, without providing any other means for that purpose, is in violation of the intendment of the constitution, an infringement by the legislature upon the judicial powers of the state, and cannot be upheld. The means of enforcing its process and judgment is of the very essence of judicial power and authority, and to relieve public officers from all obligation to obey a court or magistrate is the most serious blow that can be dealt to them. The office of justice of the peace, while inferior in power and authority to that of judge of the court of appeals or justice of the supreme court, is a very important one in our system of government, and, within its sphere, is, in law, just as much entitled to respect, and to the protection of the constitution, as that of either of the other courts I have mentioned. If sheriffs and constables can be relieved of the duty of serving the process or enforcing the mandates of justices of the peace, so they can of any other magistrate or court. The principle is the same whether applied to the justice's court or the court of last resort. If the power exists in the legislature as to the one, it does as to the others, and the judiciary is no longer an independent branch of the government, but is subject to legislative control. It is unnecessary to enter into any argument to show that that is contrary to the fundamental law of the state.

For these reasons it seems to me that sections 19 and 20 of chapter 22 of the Laws of 1896 are unconstitutional and void, and, consequently, that the relators are entitled to their fees. This conclusion is not in conflict with the case of In re Gertum v. Board, 109 N. Y 170, 16 N. E. 328. In that case the court said:

"It is undoubtedly beyond the power of the legislature by direct legislation to abolish the office of justice of the peace in towns, or shorten their terms of office, so long as the town exists; but they have an unquestioned right to alter and change the limits of their jurisdiction, or abolish the town organization altogether, provided it be done in good faith, and for proper constitutional objects. The whole force and effect of the provision in relation to justices is satisfied by enforcing it so long as there is a town organization in existence authorized under the constitution to elect justices of the peace, and requiring the performance of their functions in the government of the town."

Neither is it in conflict with the cases of Sill v. Village of Corning, 15 N. Y. 297; Brandon v. Avery, 22 N. Y. 469; People v. Terry, 108 N. Y. 1, 14 N. E. 815; Bocock v. Cochran, 32 Hun, 521; Village of Deposit v. Vail, 5 Hun, 310; Rockwell v. Raymond (City Ct. Yonkers) 5 N. Y. Supp. 642; People v. Duffy, 49 Hun, 276, 1 N. Y. Supp. 896. All those cases arose over laws creating courts for cities or villages, and where the exercise of their jurisdiction was confined to the limits of such city or village, and the acts were held

constitutional, because limited in jurisdiction to the territory of the city or village for which they were created. In the first case—that of Sill v. Village of Corning—the law was held valid because there was no restriction upon the legislature, either express or implied, as the constitution then was, which prohibited their organizing local courts for villages; and in the other cases because they were passed in pursuance of that provision of the constitution which expressly permitted the organization of inferior local courts, and those courts were each of them inferior in jurisdiction—that is, territorial jurisdiction—to any of the courts provided for in the constitution.

In the case of Brandon v. Avery the court held that, as the territorial jurisdiction of the court was confined to the village, that sufficiently marked the distinction between that office and justice of the peace of towns to save the act from being condemned as unconstitutional. See Geraty v. Reid, 78 N. Y. 67. In Geraty v. Reid, the court, in discussing the question before it, said that, the constitution of 1846 having "provided specifically for the election of justices of the peace in the several towns of the state, hence it was not competent for the legislature to create that office, and provide for an election in a different manner or by any other locality. The implied prohibition is as effectual as if it had been expressed."

In the case of People v. Terry, after reciting the fact that the jurisdiction of the justice provided for by the act then under consideration was confined to the limits of the village of Canton, the court said:

"This makes the court a local one. The jurisdiction which the justice exercises is inferior to that of the justice of the peace of towns, because it is more limited in area, and also in kind, in civil cases, for in those he is so limited in the exercise of his jurisdction that both parties must be residents or inhabitants of the village."

For those reasons it was held that the court established by the act was both local and inferior.

In none of the cases was a law sustained that gave the local court the same territorial jurisdiction as that of justice of the peace of towns. And in no case was there any attempt to relieve the justices of the peace from the obligation of performing their duty, and exercising the powers and jurisdiction of their offices in proper cases, or depriving them of their compensation in such cases as they did act in, nor was any attempt made to deprive them of the services of officers to execute their process. The conclusion arrived at, however, is in harmony with the case of Waters v. Langdon, 40 Barb. 408, cited and approved in Geraty v. Reid, 78 N. Y. 66. In that case the act in question provided that:

"The police justice shall have the same powers and jurisdiction, and be subject to the same rights and liabilities as justices of the peace in the town of Whitestown."

The court said:

"This act says in broad and plain language that the police justice shall have the same powers and jurisdiction as a justice of the peace of the town of

45 N.Y.S.—23

Whitestown. This makes him de jure a justice of the peace of the town of Whitestown. Calling him a police justice does not restrict his jurisdiction. Regarding the police justice in this case as clothed with all the authority and jurisdiction of a justice of the peace of Whitestown, without restriction upon his jurisdiction to issue any process which a justice of the same town might issue, and to hold courts in all respects in the same manner, and with the same jurisdiction, as a justice of the peace of the town of Whitestown, I think the act in question, so far as it creates such an officer, a clear violation of the constitution."

It has not seemed to me necessary, for the purposes of these appeals, to consider the other sections of the law, or to determine whether that portion of it providing for the office of police justice and defining his powers is constitutional or not, for the reason that sections 19 and 20 may be stricken from the act, and still leave it an operative and effective law; and I cannot say that the matters contained in those sections form such an essential part of the plan contemplated by the act that without their presence the legislature would not have passed it. Neither have I overlooked that part of section 18 of article 3 of the constitution which prohibits the passage of any local bill decreasing the fees of public officers during the terms for which said officers are elected or appointed, but it has seemed to me unnecessary to discuss it.

The orders appealed from should be affirmed, with costs and disbursements. All concur.