RAMÓN BANUCHI, ALCALDE de ISABELA, peticionario y apelado, *v.* LA ASAMBLEA MUNICIPAL de ISABELA, demandada y apelante.

No. 4491.—*Visto:* Febrero 24, 1928.  *Resuelto:* Marzo 29, 1928.

1. CERTIORARI — NATURALEZA Y FUNDAMENTOS — TÉRMINO PARA ESTABLECER EL PROCEDIMIENTO—REVISIÓN DE ACTOS LEGISLATIVOS O ADMINISTRATIVOS MUNICIPALES.—Radicada una petición de *certiorari* para anular ordenanza aprobando un presupuesto municipal dentro de los treinta días siguientes a aquel en que es aprobada, no cabe sostener que la acción está prescrita.

2. CERTIORARI—NATURALEZA Y FUNDAMENTOS—PERSONAS CON DERECHO A REVISIÓN POR CERTIORARI—ACTOS LEGISLATIVOS MUNICIPALES.—Cuando una asamblea municipal suprime en el presupuesto sueldos necesarios y asignaciones precisas para servicios públicos, el alcalde es parte perjudicada con derecho como tal a pedir, por medio del *certiorari* que autoriza el artículo 65 de la Ley Municipal, la revisión de la ordenanza.

3. CERTIORARI—NATURALEZA Y FUNDAMENTOS—ACTUACIONES DE JUNTAS Y MUNICIPALIDADES—EN GENERAL.—La supresión por una asamblea municipal de sueldos necesarios y asignaciones precisas para servicios públicos en el presupuesto, es contraria a la Ley Municipal y revisable por *certiorari.*

4. CERTIORARI—NATURALEZA Y FUNDAMENTOS—ACTUACIONES DE JUNTAS Y MUNICIPALIDADES—ORDENANZAS MUNICIPALES.—La asamblea fué creada por la ley para tomar parte de acuerdo con la misma en la administración del municipio, no para obstaculizar y destruir la propia administración. Si así lo hace, se coloca fuera de la ley, la fuente de sus facultades se agota y es nulo cuanto realice.

5. CERTIORARI—NATURALEZA Y FUNDAMENTOS—ACTUACIONES DE JUNTAS Y MUNICIPALIDADES—ORDENANZAS MUNICIPALES.—Si bien a las asambleas municipales corresponde la aprobación del presupuesto, y son ellas, finalmente, las que deben fijar los sueldos, sin embargo, cuando la fijación de sueldos se hace en tal forma que de hecho quedan abolidos los cargos, el derecho de las cortes para intervenir y declarar nulo lo hecho es claro.

SENTENCIA de *E. S. Mestre,* J. (Aguadilla), declarando nula y sin ningún valor ni efecto una ordenanza municipal de Isabela aprobando el presupuesto de ingresos y egresos de dicho municipio. *Confirmada.*

*R. Cuevas Zequeira,* abogado de la apelante; *V. M. Fernández* y *J. Valdejulli,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un procedimiento de *certiorari* instado de acuerdo con la sección 65 de la Ley Municipal vigente, Leyes de 1924, pág. 107, por Ramón Banuchi, como Alcalde de Isabela, contra la Asamblea Municipal de dicho pueblo.

La petición es larga y extensos los documentos acompañados a la misma. Se presentó el 25 de junio de 1927. Los hechos pueden resumirse así:

Banuchi, como alcalde, preparó, de acuerdo con el tesorero del municipio, el presupuesto para regir en el año económico de 1927 a 1928 y lo remitió a la asamblea. Esta en su sesión del 11 de mayo de 1927 lo tomó en consideración y después de introducir en él radicales modificaciones, lo aprobó y a su vez lo remitió al alcalde para su aprobación. El alcalde lo devolvió con su veto y la asamblea lo aprobó de nuevo por el voto de dos terceras partes de sus miembros, poniéndolo así en vigor. Fué entonces que el alcalde acudió a la vía judicial en demanda de justicia, sosteniendo que la asamblea había actuado fuera de sus atribuciones al no limitarse a enmendar sino a variar de tal manera el presupuesto que de hecho anuló la intervención del alcalde y la posible de los contribuyentes; que la actuación de la asamblea era además contraria al Acta Orgánica de Puerto Rico porque rebajó sueldos a funcionarios durante el período de sus cargos, y que el presupuesto aprobado definitivamente era nulo porque las variaciones en él introducidas no se habían inspirado en la necesidad o utilidad públicas, ni estaban de acuerdo con los ingresos y egresos de años económicos anteriores, ni permitían obtener, a virtud de los sueldos asignados para determinados cargos, personas competentes para servirlos, habiéndose además dejado de proveer para el pago de ciertas deudas contraídas por el municipio.

Las variaciones más importantes introducidas por la asamblea al presupuesto preparado por el alcalde, fueron:

. En cuanto a los ingresos, se rebajaron: de $708.75 a $533.52 el ingreso por impuesto sobre carnes, de $2,651.68 a $1,836.48 los ingresos de la planta eléctrica, de $106.50 a $78.12 las entradas por multas de la corte de paz, y de $2,357.98 a $2,000 la partida de "intereses."

Y en cuanto a los egresos, ocurrió lo que sigue:

La partida de $100 asignada para material del inspector de escuelas se aumentó a $150. La asignación para alquiler de casa de dicho inspector se elevó de $240 a $300 la de $50 para gastos de viaje del mismo se subió a $100 y a $100 se elevó la partida de $50 asignada para gastos de viaje del ayudante inspector. Los $300 asignados para material para las escuelas se elevaron a $400. El sueldo del primer conserje de las escuelas se ascendió de $240 a $300 y el del segundo de $150 a $200. En vez de $285 que figuraban para adquisición y reparación de equipo escolar, se asignaron $600.

Por el contrario, el sueldo del director escolar se rebajó de $600 a $120 y la partida de $334.70 para imprevistos escolares a $54.70

El sueldo del alcalde fijado en $900, se *rebajó* por la asamblea a $1, reduciéndose la partida de material de su oficina de $100 a $50.

La cantidad de $100 fijada para reparaciones de calles y plazas se rebajó a $10 y la de $100 para reparación de caminos a $1.

Se habían asignado por el alcalde $150 para limosnas a pobres y la asamblea redujo la partida a $50. En cambio aumentó a $100 la de $75 fijada para ataúdes a pobres.

En el presupuesto del alcalde aparecía lo que sigue: "Becas. Para estudiante en el Colegio de Agricultura y Artes Mecánicas de Mayagüez, $100.00." La asamblea dispuso: "Que se enmiende el nombre de la partida señalada para una beca en el Colegio de Agricultura y Artes Ma-

nuales de Mayagüez haciendo constar que la cantidad de $100 señalada para tal fin sea para el joven Arturo Riollano de esta población.''

El sueldo del director de beneficencia se rebajó de $2,100 a $1,500.

El sueldo del escribiente del registro civil se redujo de $900 a $600.

La partida de $100 asignada para seguros contra incendios, fué eliminada.

El sueldo del operador auxiliar de la planta eléctrica se rebajó de $480 a $360. Y la partida para combustible de dicha planta fijada en $1,372 se elevó a $2,000.

El sueldo del conserje del matadero se rebajó de $300 a $125 y el de conserje del cementerio se elevó de $300 a $360.

Por último, las partidas de $701.15, de $645.40, de $502.19 y de $29.25 fijadas en el presupuesto del alcalde para pagar deudas contraídas según él por el municipio respectivamente con la West India Oil Co., The Texas Co., Félix R. Hernández y Georgino Cortés, fueron eliminadas ''por las mismas razones que adujo la asamblea al aprobar el presupuesto ordinario para el año económico de 1926–27 en que tampoco fueron reconocidas dichas deudas.''

Fuera del razonamiento que antecede, el acta no revela fundamento alguno para los acuerdos tomados en relación con los egresos. Un asambleísta proponía sin explicar por qué; se secundaba su proposición; no había objeción, y se aprobaba por unanimidad o con el voto en contra de uno. Al fijarse el sueldo del alcalde en un dólar al año, el acta dice que ocurrió lo que sigue:

''3ª Propone que se asigne un dólar como sueldo anual para el Alcalde. Secunda el Sr. Muñoz. Se somete a discusión y el Sr. Estrella se opone fundándose en que por tal cantidad no será posible que un Alcalde desempeñe eficientemente los deberes de su cargo. No habiendo más oposición se somete a votación siendo así aprobado con el voto en contra del Sr. Estrella.''

El auto solicitado por el alcalde fué expedido el 28 de

junio de 1927. Los documentos que contiene el *return* confirman en un todo los hechos que dejamos expuestos en relación con las actuaciones del alcalde y la asamblea sobre el presupuesto del municipio para el año económico de 1927 a 1928.

La asamblea por medio de su abogado presentó una moción de sobreseimiento, basándose en que el alcalde no tenía personalidad para iniciar como tal el *certiorari,* en que de la propia solicitud aparecía que la asamblea había actuado de acuerdo con la ley; en que la rebaja de los sueldos estaba dentro de la potestad de la asamblea; en que la petición no aducía hechos suficientes, y en que en todo caso el derecho que pudiera tener el peticionario había prescrito cuando fué ejercitado.

El 15 de julio de 1927 quedó el asunto sometido a la corte de distrito que lo resolvió a favor del alcalde el 1º de octubre siguiente, exponiendo en una metódica y completa opinión los fundamentos de su fallo. En su parte dispositiva la sentencia dictada declara:

". . . . nula y sin ningún valor ni efecto la ordenanza votada por la Asamblea Municipal de Isabela el día 11 de mayo de 1927 aprobando un presupuesto de ingresos y egresos para regir durante el año económico 1927–1928 en dicho Municipio, y la cual ordenanza fué aprobada nuevamente en la sesión extraordinaria que celebrara dicha Asamblea el 26 del expresado mes y año, sin especial condenación de costas."

Apeló la asamblea, celebrándose la vista del recurso el 24 de febrero último. Aunque el apelado informó en el acto de la vista por medio de su abogado, no presentó alegato por escrito, limitándose a archivar un memorándum, de acuerdo con el permiso que se le concediera, unos días después de celebrada la vista.

[1] La primera cuestión que debemos considerar es la de prescripción. No tiene fundamento alguno. Según demuestran los autos, la petición se radicó en la Corte de Distrito de Aguadilla el 25 de junio de 1927 y no el 28

como sostiene la asamblea en su moción de sobreseimiento, y a esa fecha no había transcurrido el plazo de treinta días que fija la sección 65 de la Ley Municipal, ya que la asamblea aprobó el presupuesto finalmente el 26 de mayo de 1927.

[2] La segunda cuestión que surge es la de si el peticionario en su capacidad de alcalde, ejercitando el recurso de *certiorari,* podía o no recurrir a las cortes de justicia en demanda de que se declarara nula la ordenanza.

La sección 65 de la Ley Municipal que autoriza el recurso, copiada a la letra, es como sigue:

"Artículo 65.—Las cortes de distrito tendrán jurisdicción a instancia de parte perjudicada:

"(a) Para anular o revisar cualquier acto legislativo o administrativo de la asamblea municipal, del alcalde o de los demás funcionarios municipales que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o las leyes de Puerto Rico, mediante *certiorari;*

"(b) Para suspender mediante *injunction* la ejecución de cualquier ordenanza, acuerdo, resolución u orden que lesione derechos garantizados por la constitución o las leyes insulares;

"(c) Para compeler, mediante auto de *mandamus* el cumplimiento de deberes ministeriales por los funcionarios municipales;

"(d) Para conceder, mediante juicio ordinario, conpensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios municipales, por malicia, negligencia o ignorancia inexcusables.

"En los dos primeros casos la parte perjudicada podrá solamente establecer la demanda correspondiente dentro del plazo de 30 días, a contar de la fecha en que el acto ejecutivo o administrativo haya sido realizado o que la ordenanza, acuerdo, resolución u orden hayan sido publicados o comunicados a la parte querellante."

La jurisdicción de la corte para conocer del caso, es clara. El derecho del peticionario depende de si puede considerársele o no como parte perjudicada.

El peticionario fué elegido Alcalde de Isabela por el pueblo en una de las elecciones generales celebradas en Puerto Rico. El cargo de alcalde es remunerado. El mon-

tante de la remuneración debe fijarse como sueldo en presupuesto. Art. 35 de la Ley Municipal, Leyes de 1924, p. 95. También deben recibir sueldos los funcionarios ejecutivos y empleados del municipio. Se trata de servicios prestados por personas que dedican a ellos todo, gran parte o parte de su tiempo y que usualmente viven del sueldo que por tal concepto perciben. Podría concebirse que se desarrollara una situación económica tan desahogada y un espíritu público tan entusiasta, que no ya uno, sino todos los puestos de determinada administración municipal se sirvieran gratuitamente. Pero ello sería un caso que por lo raro llamaría la atención. En nuestra isla regístrase alguno que otro ejemplo de haberse desempeñado el cargo de alcalde destinando el funcionario su sueldo a otras atenciones públicas. Pero aún en ese caso el sueldo siempre existió.

De lo dicho se concluye que para que una administración municipal pueda realizar en nuestro actual estado de desarrollo social sus funciones, los funcionarios y empleados de la misma deben percibir una adecuada remuneración por sus servicios. Así además lo ordena la ley.

Prescindiendo del perjuicio material que individualmente sufra un alcalde a quien una asamblea señale como sueldo un dólar anual, no es posible dejar de reconocer que como alcalde responsable ante el pueblo de la buena marcha de la administración, se le perjudica también con tal medida, y su perjuicio sube de punto si no sólo se le priva de sueldo sino de los otros medios materiales necesarios para cumplir sus deberes y se hace más o menos lo mismo con otro de los funcionarios de la administración y con varios de los empleados. Y si se ahonda un poco más en la situación creada por una asamblea que suprima sueldos necesarios y asignaciones precisas para servicios públicos, se podría concluir que la verdadera parte perjudicada era la comunidad en general y en particular la administración municipal elegida cuyo legítimo representante es el alcalde.

Bajo cualquier aspecto, pues, que el caso se considere, se concluye que el alcalde como tal tuvo personalidad para iniciar este procedimiento. Véase *San Millán* v. *Asamblea Municipal de Arecibo,* 32 D.P.R. 279. Copiamos del sílabo:

"En el presente caso el peticionario fué elegido para el cargo de comisionado de servicio público, policía y prisiones, por un voto de siete contra seis miembros de la asamblea municipal. Se descubrió luego que uno de los asambleístas estaba incapacitado por razón de ciudadanía para desempeñar el cargo. Subsiguientemente se reunió la asamblea y se declaró nula la elección del peticionario y el cargo vacante, habiendo sido elegida otra persona en su lugar. El peticionario sostuvo que él nunca fué destituido legalmente y que continuó activamente en el desempeño de su cargo. Se resolvió: que el peticionario es parte perjudicada con derecho, como tal, a revisar por *certiorari,* al amparo del artículo 65 de la Ley Municipal, el acuerdo de la asamblea que declaró nula su elección."

El recurso de *certiorari* autorizado por la Ley Municipal ha sido considerado por esta corte en varios casos como de naturaleza especial, amplio y propio para que las cortes de una manera inmediata y efectiva puedan intervenir, revisar y anular en su caso cualquier acto legislativo o administrativo de la asamblea municipal, del alcalde o de los demás funcionarios municipales que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o a los códigos de Puerto Rico. Y los actos realizados por la Asamblea Municipal de Isabela en este caso son por lo menos manifiestamente contrarios a la Ley Municipal que es una ley de Puerto Rico.

La anterior conclusión va a los méritos del asunto que es lo que falta por considerar separadamente.

[3, 4, 5] Dejando a un lado lo hecho por la asamblea en la ordenanza en cuestión con el director escolar a quien se le fijó un sueldo de diez dólares al mes y se le redujo la partida de imprevistos de $334.70 a $54.70, cuando se acababan de elevar todas las partidas al inspector escolar, funcionario nombrado por el Departamento Insular de Educación. Sin fijarnos en las otras rebajas de salarios y de asig-

naciones para servicios y sin tratar de penetrar en los motivos que pudiera tener la asamblea para proceder en la forma en que lo hizo, ya que ello debe ser campo vedado para las cortes, (*Piovanetti* v. *Asamblea Municipal de Yauco*, 31 D.P.R. 522), bastará que nos detengamos en lo hecho en relación con el alcalde para concluir que la ordenanza cuya nulidad se pide lo es, porque la ley dió facultades a la asamblea para dar vida a la administración municipal y no para destruirla, porque la ley dió facultades a la asamblea para fijar sueldo del alcalde y no para destituirlo. Si se reconociera potestad a la asamblea para actuar como actuó en este caso, habría que reconocer que la tenía para paralizar la administración a su antojo, para separar de su cargo al alcalde por encima de lo preceptuado por el legislador, que no otra cosa significa fijar a dicho funcionario un dólar de sueldo anual y asignarle once dólares para atender a la plaza y a las calles y a los caminos del municipio durante un año, rebajando además en más de la mitad las partidas asignadas, y usualmente gastadas bajo la dirección del alcalde, para material de oficina y socorros a indigentes.

No hay duda alguna que de acuerdo con la ley es a la asamblea a la que corresponde la aprobación final del presupuesto, siendo ella la que debe, por tanto, finalmente fijar los sueldos y las asignaciones, pero su poder no es arbitrario. Bajo el gobierno de ley en que vivimos y que constituye una de las grandes conquistas de la civilización, la ley debe siempre prevalecer. La asamblea fué creada por la ley para tomar parte de acuerdo con la misma en la administración del municipio, no para obstaculizar y destruir la propia administración. Si así lo hace, se coloca fuera de la ley, la fuente de sus facultades se agota y es nulo cuanto realice.

La jurisprudencia sobre la materia es abundante. Siguiendo una cita de Ruling Case Law que hizo en su opinión la corte sentenciadora y que dice: ''Cuando la Asamblea Municipal haya fijado un sueldo, su decisión no es revisable,

a menos que el sueldo sea tan bajo que ninguna persona competente pueda aceptar el puesto." 22 R.C.L. 531, encontramos en la nota el caso de *De Merritt* v. *Weldon,* de California, reportado además de en 154 Cal. 545, en 16 Ann. Cas. 955, y de la nota que al pie del mismo figura, tomamos lo que sigue:

"Parece bien establecida la regla de que un organismo público que tiene la autoridad de regular la compensación correspondiente a determinado cargo, pero que no tiene autoridad para abolirlo, no puede eliminar esa compensación en forma tal que en efecto quede abolido el cargo. Reid vs. Smoulter, 128 Pa. St. 324, 18 Atl. 445, 5 L.R.A. 517; State vs. Nashville, 15 Lea (Tenn.) 697, 54 Am. Rep. 427. Véase además Morris vs. Glover, 121 Ga. 751, 49 S. E. 786; People vs. Howland, 17 App. Div. 165, 45 N.Y.S. 347, confirmado en 155 N. Y. 270, 49 N. E. 775, 41 L.R.A. 838; White vs. Auditor, 126 N. C. 570, 36 S. E. 132.

"En el caso de State vs. Nashville, *supra,* la corte dijo: 'Si el alcalde cumple con los deberes impuéstoles por la ley, no tendría tiempo para dedicarse activamente a ningún otro negocio. Si la asamblea municipal puede privar al alcalde y al negociado de obras públicas de toda remuneración, entonces tiene poder para enervar a esos departamentos del gobierno en tal forma que desaparecerán toda su eficiencia y vigor y el gobierno de la ciudad quedaría prácticamente en manos de la asamblea. En ese caso el sistema de gobierno dispuesto por la carta orgánica sería aniquilado y la intención de la Legislatura quedaría burlada. No puede haber tenido la intención de revestir a la asamblea de una autoridad tan peligrosa. . . . .

"El caso citado está de acuerdo con las otras decisiones sobre la materia de que cuando un organismo público tiene autoridad para fijar la remuneración correspondiente a determinado cargo, pero no para abolirlo, no puede reducir la remuneración en tal forma que en efecto quede abolido el cargo. Bugg vs. Sebastián County, 64 Ark. 515, 43 S. W. 506; State vs. Shreveport, 124 La. 178, 50 So. 3; De Soto Country vs. Westbrook, 64 Miss. 312, 1 So. 352. Véase además Powell vs. Durden, 61 Ark. 21, 31 S. W. 740.

"En el caso de State vs. Shreveport, *supra,* en el cual aparecía que la asamblea municipal de la ciudad demandada había rebajado la remuneración del auditor municipal, cargo establecido por su carta orgánica, de $1,500 a $300 anuales, la corte, al resolver que

tal rebaja era nula, dijo: ''Cuando la constitución crea un cargo, la Legislatura no puede abolirlo o anularlo ni por medios directos ni indirectos; y cuando la Legislatura crea un cargo, la asamblea municipal no puede abolirlo o anularlo por medios directos ni indirectos. Y si la Legislatura o una asamblea municipal tratan de hacer indirectamente lo que legalmente no podrían hacer directamente, el derecho de las cortes a intervenir sería enteramente claro.''

*Debe confirmarse la sentencia recurrida.*