HON. JULIO CÉSAR LÓPEZ GERENA, en su carácter de ALCALDE DEL MUNICIPIO DE HUMACAO, demandante y recurrido, *v.* HON. IRIS N. RAMOS COFRESÍ ET AL., demandados y recurrentes.

*Número:* RE-93-428    *Resuelto:* 16 de abril de 1996

588

590

*Raúl Aquino Pinto* y *Víctor M. Negrón Padilla*, abogados de la parte recurrente; *Eliezer Aldarondo Ortiz* y *Miguel Pagán*, de *Aldarondo, López Bras & Pagán*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La Asamblea Municipal del Municipio de Humacao solicita que revisemos la sentencia dictada por el entonces Tribunal Superior que, a petición del Alcalde, ordenó a la Asamblea Municipal enmendar el presupuesto aprobado por dicho cuerpo para el Año Fiscal 1993–1994. En particular, el tribunal dispuso que se restituyeran unas plazas que habían sido eliminadas en el presupuesto y que se asignaran fondos para cubrir los veinticinco (25) puestos de confianza del Primer Ejecutivo municipal. El recurso requiere que nos pronunciemos sobre las disposiciones de la nueva Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (en adelante Ley de Municipios Autónomos), Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*) que rigen el proceso de aprobación de los presupuestos municipales. Evaluada la con-

troversia de autos a la luz de la nueva ley orgánica de los municipios, confirmamos el dictamen recurrido.

I

En mayo de 1993 el Alcalde del Municipio de Humacao, Hon. Julio César López Gereña, sometió a la consideración de la Asamblea Municipal un proyecto de presupuesto para el Año Fiscal 1993–1994. La Asamblea, por su parte, aprobó un presupuesto diferente al sometido por el Alcalde. En el de la Asamblea se eliminaron veintinueve (29) plazas de empleados municipales, incluyendo puestos de confianza, y se efectuaron reducciones en los salarios y beneficios marginales de algunos puestos directivos. Además, se crearon unos puestos adscritos a la Asamblea.

Examinado el presupuesto que fue aprobado y con el beneficio de una opinión del Comisionado de Asuntos Municipales, el Alcalde lo devolvió a la Asamblea Municipal sin firmar, con unas objeciones y recomendaciones. La Asamblea evaluó las objeciones y recomendaciones del Alcalde y con el voto de dos terceras (2/3) partes de los miembros del cuerpo municipal aprobó el presupuesto mediante la Resolución Núm. 46, Serie 1992–1993. En este presupuesto se acogieron algunas de las recomendaciones del Alcalde y se rechazaron otras.

Por entender que la Asamblea Municipal violó la Ley de Municipios Autónomos al aprobar un nuevo proyecto de presupuesto sin haber considerado únicamente las objeciones y recomendaciones presentadas por el Primer Ejecutivo Municipal, éste presentó una petición de *injunction* ante el entonces Tribunal Superior contra la Presidenta de la Asamblea Municipal y los asambleístas de la mayoría, que eran miembros del Partido Popular Democrático.

En particular, alegó que el presupuesto contravenía las disposiciones del Art. 7.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4303, que requiere asignaciones

mandatorias en ciertas partidas. También señaló que era contrario al Art. 7.004 (21 L.P.R.A. sec. 4304) que establece el procedimiento que deberá seguir la Asamblea Municipal al considerar las recomendaciones y objeciones del Alcalde sobre el presupuesto que había sido devuelto sin firmar.

Después de algunos incidentes procesales, las partes sometieron el caso por las alegaciones y los documentos. Oportunamente, el Tribunal Superior dictó una sentencia en la cual concluyó que la Asamblea Municipal no actuó conforme a los preceptos dispuestos por la Ley de Municipios Autónomos. En síntesis, el foro de instancia resolvió que el presupuesto adolecía de ciertas omisiones y defectos y ordenó que la Asamblea Municipal rectificara los errores en un plazo de veinte (20) días. De lo contrario, se anularía el presupuesto y quedaría vigente el que originalmente fue sometido por el Alcalde.

El Tribunal Superior interpretó que el citado Art. 7.003 concede a la Asamblea Municipal el poder para enmendar el proyecto de resolución del presupuesto general que presente el Alcalde, el cual está sujeto a las limitaciones indicadas en los incisos (a), (b), (c), (d) y (e), referentes a las asignaciones mandatorias. También fundamentó su decisión en que la ley concede al Alcalde unas prerrogativas en el nombramiento de su personal de confianza que "como corolario suponen una limitación a las de la Asamblea".

En su sentencia, el tribunal a quo determinó, además, que "en la versión del presupuesto de la Asamblea no se toma en cuenta el pago al Seguro Social y Bono de Navidad de algunos empleados, la aportación al Sistema de Retiro y bono de navidad del puesto de conductor, las partidas para pagos al Fondo de Seguro y la Autoridad de Energía Eléctrica son menores que las que aparecen en el proyecto del Alcalde; se eliminaron 17 plazas, 5 de ellas ocupadas; no se proveyó para los 25 puestos de confianza del Alcalde, ni para el cargo de secretaria para la División de Ordenación Territorial, tampoco para el puesto de perito electricista".

En vista de que el presupuesto aprobado por la Asamblea Municipal no incluía asignaciones para estas obligaciones, el tribunal de instancia ordenó que se hicieran los reajustes necesarios y que los cambios se cargaran a la cuenta de la Asamblea Municipal.

Inconforme con este dictamen, la Asamblea Municipal nos solicita que lo revoquemos. Alega que el foro de instancia interpretó de forma equivocada que según la Ley de Municipios Autónomos el Alcalde de Humacao tiene derecho a cubrir veinticinco (25) plazas de confianza y que a tenor con la interpretación de la sentencia recurrida la Asamblea no podrá aprobar un presupuesto con un número menor de estas plazas.

Sostiene, además, que el foro de instancia se equivocó al resolver que se habían eliminado cinco (5) plazas ocupadas y al ordenar que éstas fueran restituidas. Por otro lado, expone que el tribunal a quo erró al ordenarle a la Asamblea Municipal que creara el puesto de secretaria ejecutiva para la división de ordenación territorial. Finalmente, impugna el término perentorio dictado por el tribunal para enmendar el presupuesto y rectificar los errores cometidos.

Por la naturaleza de la controversia del caso de autos, y considerando que el *injunction* emitido por el foro de instancia contiene una interpretación de los poderes del Alcalde y de la Asamblea Municipal de Humacao en materia de aprobación del presupuesto que constituye el estado de derecho entre esos poderes, oportunamente expedimos el recurso. La controversia entre los poderes municipales en este caso claramente trasciende el presupuesto de 1993–1994. Con el beneficio de los escritos que fueron sometidos por todas las partes, procedemos a resolver la controversia ante nos.

## II

En 1991 la Asamblea Legislativa aprobó varias leyes para reformar integralmente la constitución, la organización, la administración y el funcionamiento del régimen del gobierno municipal en Puerto Rico. La ley medular de esta reforma fue la Ley de Municipios Autónomos, que sustituye y deroga la Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 2001 *et seq.*), así como otras leyes relativas al funcionamiento de los municipios. Como parte de esta reforma también se aprobó la Ley Núm. 80 de 30 de agosto de 1991, conocida como la Ley del Centro de Recaudación de Ingresos Municipales (21 L.P.R.A. sec. 5801 *et seq.*); la Ley Núm. 82 de 30 de agosto de 1991, que enmienda la Ley de Patentes Municipales (21 L.P.R.A. secs. 651a, 651c–651d, 651f, 651h–651j, 651l–651m y 652x); la Ley Núm. 83 de 30 de agosto de 1991, conocida como la Ley de Contribución Municipal sobre la Propiedad de 1991 (21 L.P.R.A. sec. 5001 *et seq.*), y la Ley Núm. 73 de 22 de septiembre de 1992, que creó la Comisión para Fomentar la Autonomía Municipal (21 L.P.R.A. sec. 4990 *et seq.*).

Esta reforma abarcadora del ordenamiento municipal otorgó a los municipios un mayor grado de autonomía fiscal y de gobierno propio, además de nuevos instrumentos administrativos y fiscales. Su objetivo principal fue "iniciar un proceso de renovación político-administrativo del gobierno municipal con la finalidad de fomentar una mayor autonomía y la descentralización gubernamental de Puerto Rico". L. Santana Rabell y M. Negrón Portillo, "Introducción: aspectos generales de la reforma municipal" en *La reforma municipal en Puerto Rico: retos y oportunidades*, 2da ed., San Juan, Ed. Escuela Graduada de Administración Pública (U.P.R.), 1995, pág. 2. Este nuevo ordenamiento amplió sustancialmente los poderes administrativos y fiscales de los municipios y transfirió a éstos

funciones del Gobierno de Puerto Rico para poder atender de forma directa las necesidades de la ciudadanía. En la Declaración de Política Pública, incluida en el Art. 1.002 del estatuto, 21 L.P.R.A. sec. 4001n, en específico se trazaron las metas siguientes:

> "... [S]e declara como política pública del Estado Libre Asociado de Puerto Rico otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y los poderes y facultades necesarias para asumir un rol central y fundamental en su desarrollo urbano, social y económico. Esta Ley de Municipios Autónomos ... crea los mecanismos para que los municipios tengan los poderes y facultades que son esenciales para un funcionamiento gubernamental democrático efectivo; poderes y facultades que antes de esta [legislación] residían exclusivamente en el gobierno central". Art. 1.002 de la Ley Núm. 81, *supra.*

■ Aunque la nueva legislación tiene estos objetivos tan laudables y ambiciosos, en lo que respecta a la organización básica del gobierno municipal, la Ley de Municipios Autónomos mantiene el mismo esquema que la legislación anterior con dos (2) poderes: el Legislativo y el Ejecutivo. Como en el gobierno central, en el municipal existe una separación de funciones entre ambas ramas, pero hay una estrecha interrelación entre ellos que impide una excesiva concentración de poderes en cualquiera de los organismos.

■ Como Primer Ejecutivo Municipal, los alcaldes tienen la responsabilidad de dirigir, administrar y fiscalizar el funcionamiento de los municipios y "[s]us deberes se extienden desde la administración del gobierno municipal, hasta la preparación del proyecto de presupuesto que ha de considerar la Asamblea en primera instancia". *Acevedo v. Asamblea Mun. San Juan*, 125 D.P.R. 182, 184 (1990).

■ En cuanto a las facultades legislativas, éstas se ejercen por una Asamblea Municipal, cuyos miembros son electos en cada elección general por el término de cuatro (4) años. Entre los miembros de la Asamblea se elige un

presidente y un vicepresidente. El Presidente de la Asamblea dirige los trabajos de las sesiones ordinarias y extraordinarias, y representa y comparece a nombre de la Asamblea en todos los actos jurídicos y oficiales. Además, es el jefe administrativo del cuerpo y, en tal capacidad, dirige y supervisa las actividades y transacciones de la Asamblea y de la Secretaría. 21 L.P.R.A. sec. 4202.

A tenor con esta legislación, el Alcalde tiene la obligación de preparar un proyecto de resolución de presupuesto general de ingresos y gastos de funcionamiento del municipio para cada año fiscal y someterlo a la Asamblea Municipal. 21 L.P.R.A. sec. 4301. Este presupuesto debe ser sometido no más tarde del 31 de mayo de cada año en una sesión extraordinaria de la Asamblea Municipal especialmente convocada a esos fines. 21 L.P.R.A. sec. 4110(g) y (h). Por su parte, la Asamblea deberá considerar el proyecto de presupuesto durante una sesión ordinaria y someterlo al Alcalde no más tarde del 13 de junio de cada año. 21 L.P.R.A. sec. 4304.

Una vez la Asamblea Municipal le remite al Alcalde el proyecto aprobado, éste tiene un término de seis (6) días para firmarlo o devolverlo con sus objeciones y recomendaciones. También puede dejar pasar el término de seis (6) días sin acción alguna y en ese caso se entenderá que éste ha sido aprobado. 21 L.P.R.A. sec. 4304(a). Por otro lado, si el Alcalde devuelve el presupuesto a la Asamblea, el Presidente del cuerpo legislativo tiene que convocar a una sesión extraordinaria para considerar únicamente las recomendaciones u objeciones del Primer Ejecutivo Municipal. 21 L.P.R.A. sec. 4304(b). Por su parte, la Asamblea puede enmendar el proyecto para adoptar todas o parte de las recomendaciones del Alcalde y devolverlo para su firma. 21 L.P.R.A. sec. 4304(b)(1). Si el Ejecutivo no endosa el presupuesto, la Asamblea puede aprobarlo sobre las objeciones del Alcalde con el voto afirmativo de no

menos de dos terceras (2/3) partes del número total de asambleístas. 21 L.P.R.A. sec. 4304(b)(2).

Como parte del proyecto de resolución, el Alcalde tiene que incluir un mensaje presupuestario con unas explicaciones y justificaciones de las peticiones presupuestarias de mayor magnitud y trascendencia. 21 L.P.R.A. sec. 4302(a). El proyecto de resolución deberá incluir también un plan financiero con un resumen general de los gastos municipales. 21 L.P.R.A. sec. 4302(b).

■ Además, el Art. 7.003 de la Ley de Municipios Autónomos, *supra*, dispone que será mandatorio incluir "asignaciones con crédito suficiente" para atender unas prioridades municipales específicamente enumeradas. Aunque la ley autoriza a la Asamblea Municipal a enmendar el proyecto de presupuesto que someta el Alcalde para incorporar nuevas cuentas o disminuir o eliminar algunas partidas, estas asignaciones mandatorias no pueden ser reducidas o eliminadas.

■ Las asignaciones mandatorias que están incluidas en la ley son: (*a*) el pago de la deuda pública; (*b*) los gastos y las obligaciones estatutarias; (*c*) el pago de las sentencias de los tribunales; (*d*) el déficit del año anterior, y (*e*) los gastos que el municipio esté obligado a pagar por contratos celebrados anteriormente. 21 L.P.R.A. sec. 4303. Como resultado de este mandato legislativo, ni el Alcalde ni la Asamblea Municipal pueden reducir o eliminar estas asignaciones presupuestarias.

■ Aunque del texto de la Ley de Municipios Autónomos no se desprende con claridad cuáles son las otras obligaciones estatutarias a las que se refiere el citado Art. 7.003, al interpretarla debemos asegurar que se logre el propósito del estatuto de que los alcaldes cuenten con personal de confianza para formular y poner en vigor la política pública municipal. Por lo tanto, entre las obligaciones estatutarias que el presupuesto debe garantizar están las

asignaciones para cubrir tanto los puestos de directores de unidades administrativas básicas del Poder Ejecutivo municipal enumerados en el Art. 6.001 de la citada ley, 21 L.P.R.A. sec. 4251, como las otras plazas de confianza de la Rama Ejecutiva autorizadas por el Art. 12.003 (21 L.P.R.A. sec. 4553). El Alcalde tiene la autoridad de "establece[r] por orden ejecutiva un plan de puestos de confianza que contenga un máximo de veinticinco (25) puestos de confianza con que interese funcionar". 21 L.P.R.A. sec. 4553. En lo que concierne a los directores de las unidades administrativas, la Ley de Municipios Autónomos los incluye dentro del servicio de confianza y sus nombramientos están sujetos a la confirmación de la Asamblea Municipal de cada municipio. 21 L.P.R.A. sec. 4252.

En este sentido la nueva legislación es distinta a la anterior Ley Orgánica de los Municipios de Puerto Rico. Bajo ese ordenamiento, las Asambleas Municipales determinaban por ordenanza los puestos que estaban incluidos dentro de la categoría de empleados de confianza. Véase 21 L.P.R.A. sec. 3352. Sin embargo, la nueva Ley de Municipios Autónomos dispone que todo municipio tendrá un número mínimo de unidades administrativas y autoriza únicamente al Alcalde a establecer el plan de puestos de confianza "por orden ejecutiva".

A tenor con esta nueva ley, la Asamblea Municipal no tiene la facultad para intervenir ni en la elaboración ni en la adopción del plan de puestos de confianza. Sólo "[c]uando la estructura organizativa, complejidad funcional o tamaño del municipio requiera un número mayor de puestos de confianza, será necesaria la aprobación de una ordenanza" por parte de la Asamblea. 21 L.P.R.A. sec. 4553. En otras palabras, la ley limita la intervención de la Asamblea en lo referente a la aprobación de puestos de confianza a las situaciones excepcionales en que el municipio requiera más de veinticinco (25) puestos de confianza.

■ Del ordenamiento municipal antes expuesto se desprende que, aunque la Asamblea Municipal de cada municipio tiene el poder para aprobar anualmente el presupuesto general de ingresos y gastos de operación y funcionamiento, su autoridad está específicamente limitada por las disposiciones descritas. Además, esta facultad no puede ejercerse de forma arbitraria:

> No hay duda alguna que de acuerdo con la ley es a la asamblea a la que corresponde la aprobación final del presupuesto, siendo ella la que debe, por tanto, finalmente fijar los sueldos y las asignaciones, pero su poder no es arbitrario. Bajo el gobierno de ley en que vivimos y que constituye una de las grandes conquistas de la civilización, la ley debe siempre prevalecer. La asamblea fu[e] creada por la ley para tomar parte de acuerdo con la misma en la administración del municipio, no para obstaculizar y destruir la propia administración. Si así lo hace, se coloca fuera de la ley, la fuente de sus facultades se agota y es nulo cuanto realice. *Banuchi v. Asamblea Municipal*, 37 D.P.R. 946, 954 (1928).

Esta normativa, en particular, aplica al caso de autos en el cual las diferencias políticas entre la mayoría de los asambleístas, afiliados al Partido Popular Democrático, y el Alcalde de Humacao, del Partido Nuevo Progresista, han tenido durante este cuatrienio una lucha intensa de poder, particularmente en lo referente a la aprobación de los distintos presupuestos generales. Lo mismo ha ocurrido en otros municipios de la Isla en que los Alcaldes y la mayoría de los asambleístas pertenecen a diferentes partidos políticos. En algunos de esos municipios, los conflictos entre los dos (2) poderes municipales han afectado de forma adversa la obra de gobierno en perjuicio de los mejores intereses de la ciudadanía.

### III

En el caso de autos, la Presidenta de la Asamblea Municipal de Humacao y los miembros de la mayoría de ese

cuerpo impugnan el *injunction* emitido por el entonces Tribunal Superior que les ordena restablecer unas plazas eliminadas del presupuesto de gastos operacionales y reduce de modo proporcional los aumentos decretados en los fondos asignados a la Asamblea.

En su recurso de revisión señalan que el entonces Tribunal Superior cometió un error al negarse a desestimar la acción legal incoada por el Alcalde López Gerena por falta de jurisdicción sobre ellos. Sostienen que el tribunal no asumió jurisdicción sobre la Asamblea Municipal porque no se incluyó como partes a todos los miembros.

Los peticionarios no tienen razón. En este caso el Alcalde López Gerena incoó una petición de *injunction* contra la Presidenta de la Asamblea Municipal, Hon. Iris Ramos Cofresí, y los asambleístas de la mayoría, afiliados al Partido Popular Democrático, para suspender la ejecución de la resolución del presupuesto que fue aprobada por dicho cuerpo legislativo. Claramente la petición fue contra una resolución aprobada por la Asamblea Municipal de Humacao y tenía el propósito de que ésta fuese declarada *ultra vires* y anulada. Como los miembros de la Asamblea actuaron plenariamente en la ejecución de una facultad delegada en ese poder por la Ley de Municipios Autónomos, la demanda tenía que ser presentada contra la Asamblea y no contra sus miembros en su capacidad individual. Como la resolución había sido aprobada por la Asamblea, la acción para impedir que ellos individualmente actuaran no tenía sentido alguno. Véase 17 *McQuillin, Municipal Corporation, 3rd.*, sec. 49.22, pág. 271.

Por otro lado, la Ley de Municipios Autónomos expresamente dispone que entre sus atribuciones el Presidente de la Asamblea Municipal está facultado para representar y comparecer a nombre del cuerpo en los actos jurídicos requeridos por ley. Por ende, al ser demandada en su calidad de Presidenta de la Asamblea, ella poseía legitima-

ción pasiva y tenía facultad para representar a ese cuerpo y así lo ha hecho durante todo este litigio.

En su recurso, la Presidenta también sostiene que el tribunal a quo erró al resolver que el Alcalde López Gerena tiene derecho a veinticinco (25) puestos de confianza en su estructura administrativa. Afirma que la Asamblea Municipal tenía poder para eliminar puestos de confianza y asignar los fondos a otras partidas, incluyendo un aumento sustancial en los fondos asignados a ese cuerpo legislativo.

■ Del análisis de la Ley de Municipios Autónomos se desprende que el nuevo estatuto concedió autoridad a los alcaldes para establecer mediante una orden ejecutiva el plan de puestos de confianza para los funcionarios que "intervengan o colaboren sustancialmente en el proceso de formulación de política pública, asesor[ando] directamente, o presten servicios directos al Alcalde". 21 L.P.R.A. sec. 4553. También concedió autoridad a la Presidenta de la Asamblea para escoger todos los empleados de ese poder y clasificarlos como de confianza por su relación directa con dicha funcionaria.

■ Por otro lado, la Ley de Municipios Autónomos requiere que cada municipio tenga una unidad administrativa básica y mínima compuesta de divisiones previamente enumeradas en el estatuto. Cada una de esas unidades tendrá un director, que formará parte del servicio de confianza y cuyo nombramiento deberá ser sometido a la Asamblea Municipal para una evaluación limitada. En ese sentido, la legislación enumera un mínimo de puestos de confianza que deberán ser incluidos en la orden ejecutiva del Primer Mandatario Municipal.

■ De esta manera, el estatuto orgánico de los municipios concedió a los alcaldes la autoridad para organizar un equipo de trabajo más íntimo que lo ayude en la formulación de una política pública o a brindar los servicios prometidos a la ciudadanía. Con excepción de los directores de

las unidades administrativas, la ley le concede a los alcaldes una amplia autoridad para establecer qué posiciones desea tener ocupadas con personal de su confianza. Tampoco les asiste la razón a los recurrentes en cuanto a este punto.

▮ La Presidenta también impugna la decisión del foro de instancia referente a la asignación de fondos para la creación del puesto de secretaria ejecutiva de la División de Ordenación Territorial. Como correctamente concluyó el tribunal recurrido, la ley expresamente ordena la creación de una Oficina de Ordenación Territorial en cada municipio con el propósito de preparar y revisar los planes de ordenación o uso de terrenos u ordenación en cada ayuntamiento. 21 L.P.R.A. sec. 4611. El estatuto dispone que esa oficina será dirigida por un director nombrado por el Alcalde y confirmado por la Asamblea Municipal. La creación de esta oficina es uno de los programas más innovadores de la nueva ley y tiene el propósito de dotar a los municipios de los poderes y los recursos para intervenir en el desarrollo de los terrenos en sus áreas. Por lo tanto, a tenor con el Art. 7.003 de la Ley de Municipios Autónomos, *supra*, la Asamblea tenía que asignarle los fondos recomendados por el Alcalde para organizar esta unidad, según lo concluyó el foro de instancia.

En vista de estas conclusiones, procede también que confirmemos los cambios en las asignaciones presupuestarias ordenadas por el entonces Tribunal Superior. Como las enmiendas introducidas por la Asamblea tuvieron el efecto de aumentar de forma substancial su propio presupuesto, procedía que los fondos requeridos para poner en vigor la orden del tribunal salieran del presupuesto del cuerpo legislativo.

Por las razones anteriormente expuestas, *se dictará sentencia que confirma el dictamen recurrido. Se devuelve el*

*caso al foro de instancia para el trámite ulterior correspondiente.*