

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>    Peticionarios<br><br><br>              v.<br><br><br>Hon. Pablo Crespo Torres y su esposa<br>Por sí y en representación de la<br>sociedad Legal de Gananciales<br><br>    Recurridos | Apelación<br><br>2011 TSPR 15<br><br>180 DPR \_\_\_\_ |

Número del Caso: AC-2009-70


Fecha: 1 de febrero de 2011


Tribunal de Apelaciones:

        Región Judicial de Mayagüez-Aguadilla Panel X


Juez Ponente:
                Hon. Carlos Soler Aquino

Oficina del Procurador General:

                Lcdo. Guillermo A. Mangual Amador
                Procurador General Auxiliar

Abogado de la Parte Apelada:

                Lcdo. Carlos Maltés Pérez

Abogada del Municipio de Añasco:

                Lcda. María del Carmen Gitany Alonso

Materia: Sentencia Declaratoria, Pago Indebido de Fondos y Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

      Peticionarios

         v.

                  AC-2009-070

Hon. Pablo Crespo Torres y su
esposa por sí y en
representación de la Sociedad
Legal de Gananciales

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 1 de febrero de 2011.

La parte apelante, el Estado Libre Asociado de Puerto Rico, nos solicita la revisión de una sentencia del Tribunal de Apelaciones que confirmó una sentencia sumaria del Tribunal de Primera Instancia, Sala Superior de Mayagüez. Asimismo, desestimó una demanda de sentencia declaratoria, pago indebido de fondos públicos y cobro de dinero presentado por el Estado contra el Municipio de Añasco; el entonces Alcalde, Hon. Pablo Crespo; y la Legislatura Municipal. El foro primario determinó que el aumento de sueldo conferido al Alcalde se otorgó conforme a derecho.

Concluyó que el aumento se hizo acorde a la entonces interpretación de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.) referente al Artículo 3.012 de la Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4112, conocida como la Ley de Municipios Autónomos. Dicha interpretación es contraria a la de la Oficina del Contralor de Puerto Rico, lo que llevó a esa entidad a cuestionar los procedimientos para la concesión del aumento en éste y otros municipios.

A los fines de resolver este caso debemos interpretar, por primera vez, el Artículo 3.012 de la Ley de Municipios Autónomos, Id. En particular, nos corresponde examinar si los criterios establecidos en ese artículo son una mera guía ilustrativa o si la Asamblea Municipal debe cumplir con ellos de manera taxativa. Además, debemos examinar si la Legislatura Municipal podía otorgar el aumento de salario del Alcalde antes de aprobar el reglamento de evaluación, determinación y adjudicación. En esta ocasión, también, tenemos la oportunidad de revisar y actualizar la doctrina del error de hecho y derecho establecida en los casos de cobro de lo indebido.

I

El 29 de agosto de 2000, el Contralor de Puerto Rico emitió el Informe M-01-09, el cual contenía los resultados de una auditoria realizada al Municipio de Añasco para el período de 1 de julio de 1996 al 30 de

junio de 1999. Este informe mencionó que no se prepararon los estados financieros del Municipio para los años 1994-95 al 1996-97. También señaló que los estados financieros del Municipio para el año fiscal 1993-94 reflejaban un déficit de $755,291 en los fondos operacionales. Por último, y en lo pertinente, la Oficina del Contralor reveló que el aumento de sueldo conferido al Alcalde en 1998 no cumplió con los siete criterios establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos, id.; y la previa aprobación de un reglamento para evaluación, determinación y adjudicación del sueldo del Alcalde. Ese artículo dispone de la manera siguiente:

> La Legislatura Municipal aprobará, con el voto de (2/3) partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación y adjudicación, del sueldo del alcalde.
>
> Al considerar aumentos de salarios para el alcalde, la Legislatura tomará en consideración, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
>
> 1. El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o *single audit*.
>
> 2. La población y el aumento en los servicios a la comunidad.
>
> 3. El cumplimiento con los controles fiscales y administrativos establecidos por O.C.A.M., la Oficina el Contralor y el gobierno federal.
>
> 4. La complejidad de las funciones y responsabilidades, del Primer Ejecutivo.
>
> 5. El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.
>
> 6. La habilidad de atraer capital y desarrollo económico al respectivo municipio.

7. Tomar en cuenta los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional.

A esos efectos, el 6 de mayo de 1998 la Legislatura Municipal de Añasco había aprobado la Resolución Núm. 15, Serie 1997-1998, para aumentar el salario del entonces Alcalde, Hon. Pablo Crespo, de $3,000 a $4,000 mensuales. La resolución no expresó qué criterios, de los contenidos en la Ley de Municipios Autónomos, fueron considerados. No obstante, la Legislatura Municipal justificó el aumento del Alcalde mediante las siguientes expresiones:

Actualmente el costo de vida es tan alto en especial para los funcionarios públicos que tiene[n] que realizar tantas y variadas tareas para cumplir con las exigencias de la posición que ocupan.

El Alcalde de cualquier Municipio de Puerto Rico se envuelve en tantas actividades y gestiones para beneficios de su pueblo que dicho envolvimiento es de todos los casos mayor que la compensación que recibe por concepto de salario.

De forma tal que las gestiones que realiza dicho Ejecutivo Municipal no vaya[n] en detrimento de su salud económica es impres[c]indible que dicho salario sea atemperado con la complejidad de su trabajo.

Además, la resolución mencionó que comenzaría a regir inmediatamente después de su aprobación por el Alcalde y la Legislatura Municipal. Ese mismo día, horas más tarde, la Legislatura Municipal de Añasco aprobó el reglamento para establecer el proceso de evaluación y adjudicación del sueldo del Alcalde. Para ello, emitió la Resolución Núm. 22. En ella afirmó que preparó un reglamento de dos páginas para la evaluación del sueldo del alcalde de

Añasco. Tanto la Resolución Núm. 15 como la Núm. 22 fueron aprobadas por el Alcalde el 12 de mayo de 1998.

La Oficina del Contralor opinó que la Legislatura Municipal aprobó este aumento de forma incorrecta. De hecho, el informe del Contralor mencionó que la Opinión del Secretario de Justicia de 23 de febrero de 1999 expuso que las Legislaturas Municipales "deben tomar en consideración todos y cada uno de los requisitos que establece el Artículo 3.012 de la Ley Núm. 81" al aumentar el sueldo del Alcalde. Por tal razón, la Oficina del Contralor recomendó al Departamento de Justicia estudiar la legalidad de la Resolución Núm. 15 y tomar las medidas legales correspondientes.

En vista de que la Resolución Núm. 15 no consideró todos los criterios esbozados en el Artículo 3.012 de la Ley de Municipios Autónomos y que el reglamento fue aprobado con posterioridad al aumento de sueldo del Alcalde, el Estado consideró que el aumento de sueldo concedido al Alcalde fue ilegal y *ultra vires*. Por lo tanto, el 20 de mayo de 2004 el Estado demandó al Municipio, la Legislatura Municipal y al entonces Alcalde. El Estado requirió que el Alcalde repusiera todas las sumas cobradas a base de la Resolución Núm. 15 y alegó que la Legislatura Municipal debió cumplir tácitamente con todos los requisitos establecidos en el Artículo 3.012 de la Ley de Municipios Autónomos.

Por su parte, los demandados recurridos contestaron la demanda denegando que el aumento fuera ilegal. Éstos alegaron que al conceder el aumento cumplieron con las directrices y la recomendación de la O.C.A.M., la cual, en aquel momento, establecía que los criterios contenidos en el Artículo 3.012 no eran exhaustivos.

Al momento de emitir el Contralor el Informe M-01-09, la diferencia en interpretación entre esta Oficina y la O.C.A.M. ya era conocida. La O.C.A.M. ya había circulado varios memorandos a distintos municipios en los que se había concluido que los criterios del Artículo 3.012 de la Ley de Municipios Autónomos no eran exhaustivos, sino que ilustran algunas de las muchas situaciones a considerar. A diferencia de la Opinión del Secretario de Justicia, la O.C.A.M. interpretó, inicialmente, que los criterios establecidos en el Artículo 3.012 no eran una lista taxativa de elementos a considerar. Por el contrario, la O.C.A.M. entendía que eran unos factores sugeridos a la Legislatura Municipal y que no cumplir con alguno de ellos no volvería nulo el proceso del aumento.

Por ejemplo, la O.C.A.M. emitió el 5 de julio de 1995 un Memorando Circular al Municipio de Patillas en el que señaló que no creía que el "reglamento ordenado en el primer párrafo [del Artículo 3.012 de la Ley de Municipios Autónomos] sea una condición *sine qua non* de un aumento al Alcalde". Dicha opinión se emitió al poco

tiempo de aprobarse ese artículo y hacía referencia a un período de transición en el que se podía emitir aumentos sin la aprobación del reglamento. También señaló que ese reglamento debía aprobarse a la mayor brevedad.

El 29 de octubre de 1998, la O.C.A.M. emitió al Municipio de Aguas Buenas un Memo Circular en el que señaló lo siguiente, en referencia al Artículo 3.012:

1. Los criterios de la ley no son exhaustivos, sino meramente ilustrativa [sic] de algunos de los muchos criterios a considerar al evaluar la compensación justa que debe percibir el Alcalde.

2. La mera ausencia de uno de los criterios al realizar la evaluación no es una fatal; la ley no busca un estudio con rigor académico sino una decisión razonable y mesurada.

3. El análisis de la política pública debe ser ponderado, por ello, la ausencia de un criterio debe ser compensada.

Además, indicó que algunos de los criterios, como por ejemplo el de *single audit*, planteaban problemas particulares para los Municipios. Explicó que, en tales casos, era muy difícil que los municipios pudieran inmediatamente cumplir con ese criterio y que no era razonable que el legislador "reconociera a los municipios el poder de fijar el salario del Alcalde y que al mismo tiempo, les impidiera el ejercicio de tal facultad imponiéndoles..." una condición que no tendrían a su disposición en años. En esa circular, la O.C.A.M. mencionó que "ha sido consistente en su interpretación" desde que ese artículo se aprobó y que incumplir con todos los criterios no era causa para nulidad.

Del mismo modo, surge del expediente un Memorando Circular del 14 de junio de 1999 en el que la O.C.A.M. informó al Municipio de Yabucoa que consecuentemente había expresado que "los criterios que la ley establece no son exhaustivos, sino que meramente ilustran algunas de las muchas situaciones a considerar por la Asamblea al evaluar un propuesto aumento de salario para los Alcaldes". Es más, expuso que "la mera ausencia de uno de los criterios al realizar la evaluación no debe ser de por sí fatal, ni debe ser causa de nulidad automática". La O.C.A.M. expuso que no presumía que la ley buscara un estudio limitante y con rigor académico, sino una decisión razonable de acuerdo con la realidad y condición económica de cada municipio.

En fin, los apelados alegaron que desde la aprobación de la Resolución Núm. 15 la O.C.A.M. había emitido interpretaciones contrarias a las expuestas por la Oficina del Contralor sobre el Artículo 3.012. De hecho, los apelados estimaron que ellos tomaron en consideración esas opiniones para aumentar el sueldo del Alcalde y que no debían ser penalizados por ello. Confiaron de buena fe en la interpretación ofrecida por la O.C.A.M. y alegaron que ello debía ser suficiente para que la actuación de la Legislatura Municipal fuera válida.

Tras varios trámites procesales, los apelados presentaron una solicitud de sentencia sumaria en la que

insistieron en que la norma de derecho vigente en cuanto a la interpretación del Art. 3.012 era la que había establecido la O.C.A.M. Los apelados alegaron que no existía controversia de hechos entre las partes y que lo único que restaba adjudicar era si al confiar en las opiniones de la O.C.A.M., el Municipio de Añasco actuó de manera ilegal.

El 5 de febrero de 2007 el Estado solicitó también una sentencia sumaria y presentó su oposición a la instada por los apelados. El Tribunal de Primera Instancia declaró con lugar la moción de sentencia sumaria de los apelados. Inconforme, el Estado acudió al Tribunal de Apelaciones, el cual confirmó al foro primario. En vista de lo anterior, el Estado presentó un recurso de apelación ante este Tribunal y solicitó que declaremos nulos los actos de la Legislatura Municipal por éstos ser contrarios a la Ley de Municipios Autónomos. Expuso que la opinión de la O.C.A.M. era completamente errada y contraria a la letra de la ley, por lo que no podía ser una justificación al comportamiento de la Legislatura Municipal. Alegó que era inmaterial la opinión de la O.C.A.M. ya que una interpretación de una agencia no podía ir por encima del contenido de la ley. Explicó que es a la Rama Judicial y no a la O.C.A.M. a quien le corresponde pasar juicio sobre el contenido del Artículo 3.012 de la Ley de Municipios Autónomos.

Además, el Estado insiste en que no procede dar deferencia a una interpretación de derecho realizada por una agencia, cuando ella misma la abandonó posteriormente. Indicó que el 18 de julio de 2002 la O.C.A.M. reconsideró su directriz e indicó en una circular que las Legislaturas Municipales "tienen que considerar todos y cada uno de los criterios…" que menciona el Artículo 3.012 y que debía "constar en las actas y en las ordenanza de aprobación de aumento, evidencia fehaciente de que se analizaron todos…" los criterios. Además, la O.C.A.M. indicó que no cumplir con alguno de esos criterios, sería causa para la nulidad del aumento. También mencionó que los aumentos concedidos bajo las opiniones anteriores no se verían afectados por estas directrices. Es por ello que el Estado sostiene que O.C.A.M. no tenía capacidad para determinar lo anterior y que ello le corresponde a los tribunales. Por último, el Estado solicitó que revoquemos la sentencia del Tribunal de Apelaciones en cuanto a que la actuación de los demandados fue válida y que devolvamos el caso al foro primario, para un detenido examen, acerca de si el incumplimiento de esos requisitos conlleva la nulidad del acto y, por ende, la devolución de los salarios ilegalmente pagados.

Los apelados aseguran que se ampararon en la interpretación legal previa de la O.C.A.M. y que ellos debían darle deferencia a esa opinión. Explicaron que no

existía una opinión de algún tribunal al respecto, por lo que era irrazonable concluir que sus actuaciones fueron ilegales, y por ende, nulas. Adujeron que mucho antes de que la controversia de autos surgiera, ya las diferencias en la interpretación del Artículo 3.012 entre la Oficina del Contralor y la O.C.A.M. eran conocidas. La incompatibilidad entre la O.C.A.M. y el Contralor es evidencia de que la ley no estaba clara y que amerita interpretación.

Por su parte, los apelados indican que nuestra determinación afectará a todos los alcaldes que confiaron en la determinación inicial de la O.C.A.M. Entienden que de nosotros estimar que sus actuaciones fueron ilegales, crearíamos una inestabilidad en la base jurídica de los municipios y en el funcionamiento de su base administrativa. Alegan que ello también minaría la confianza de los funcionarios públicos y de los empleados municipales en las entidades que los regulan. Aducen que el remedio que propone el Estado conllevaría que otros alcaldes que tomaron posesión de sus cargos luego de tales aumentos y que llevan años percibiéndolos los tendrían que devolver. De igual modo, los apelados alegaron que se afectan las aportaciones patronales realizadas al Departamento de Hacienda, al Sistema de Retiro y al Seguro Social. En fin, concluyen que el efecto sería en cadena y catastrófico.

Procede el recurso de apelación ya que existe un conflicto sustancial entre decisiones previas del Tribunal de Apelaciones. En la Sentencia que aquí se apela, el Tribunal de Apelaciones, Región Judicial de Mayaguez-Aguadilla, validó el aumento de sueldo otorgado al alcalde de Añasco, a pesar de que no se había aprobado el Reglamento requerido por el Art. 3.012 de la Ley de Municipios Autónomos, supra. Por el contrario, en un caso similar al de autos, E.L.A. v. Bernando Negrón Montalvo, KLAN200701578, el Tribunal de Apelaciones, Región Judicial de Ponce, concluyó que eran nulos e ineficaces los aumentos concedidos a un alcalde sin que antes se hubiese aprobado el Reglamento. La apelación quedó sometida para nuestra consideración el 5 de marzo de 2010. Procedemos a resolver con el beneficio de la comparecencia de ambas partes.

II

Este pleito, al igual que otros presentados por el Estado contra algunos municipios, nace de la diferencia interpretativa entre la Oficina del Contralor de Puerto Rico y la O.C.A.M. respecto al Artículo 3.012 de la Ley de Municipios Autónomos, supra. De hecho, la Comisión Conjunta sobre Informes Especiales del Contralor de la Cámara de Representantes del E.L.A. citó al Departamento de Justicia para que éste se expresara sobre la diferencia. El Departamento de Justicia emitió un memorando el 23 de febrero de 1999, en el cual concluyó

que las Legislaturas Municipales deben "tomar en consideración todos y cada uno de los requisitos…" del Art. 3.012. También, señaló que ese artículo meramente establece los criterios mínimos a ser considerados. Fue luego de que el Secretario de Justicia emitió su opinión que la O.C.A.M. cambió su postura interpretativa en el año 2002.

La Ley Núm. 81, supra, fue aprobada como parte de una reforma municipal en Puerto Rico. Dicha reforma otorgó a los municipios un mayor grado de autonomía fiscal y de gobierno propio. Alcalde Mun. De Humacao v. Ramos Cofresí, 140 D.P.R. 587, 595 (1996). La Ley de Municipios Autónomos declaró política pública del Estado Libre Asociado de Puerto Rico otorgar a los municipios el máximo posible de autonomía. Ello conllevó proveerles a los municipios las herramientas financieras, los poderes y facultades para asumir el rol central del desarrollo urbano, social y económico municipal. Artículo 1.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001; Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 886 (1996).

El Artículo 1.044 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4002, expone las normas de interpretación de esta ley. Dicta que

> [l]os poderes y facultades conferidos a los municipios por este subtítulo o cualquier otra ley, excepto disposición en contrario, se interpretarán **liberalmente, en armonía con la buena práctica de política pública fiscal y administrativa**, de forma tal que siempre se

propicie el desarrollo e implantación de la política pública enunciada en este subtitulo de garantizar a los municipios las facultades necesarias en el orden jurídico, fiscal y administrativo para atender eficazmente las necesidades y el bienestar de sus habitantes[énfasis suplido].

La Ley Núm. 36 de 13 de abril de 1995 enmendó la Ley de Municipios Autónomos, entre otras cosas, para añadir el Artículo 3.012, supra. Ese artículo establece los criterios que las Legislaturas Municipales deberán tomar en consideración al otorgar aumentos de salarios a los alcaldes. La inclusión de este artículo se presentó en la Sección 13 en el P. de la C. 627 del 30 de abril de 1993. Inicialmente, en ese proyecto se contempló establecer unas escalas salariales para los alcaldes, las cuales dependerían de la cantidad de habitantes que existiera en cada municipio. Además, se disponía que las escalas de salarios se evaluarían cada cinco años por la Asamblea Legislativa. Todo ello tenía el fin de atemperar los salarios al costo de vida y el grado de cumplimiento fiscal de los municipios. Sin embargo, posteriormente se alteró el lenguaje del proyecto para que fuese la Legislatura Municipal lo que aprobara el sueldo del alcalde a la luz de ciertos criterios de carácter fiscal.

El Primer Informe de la Comisión de Asuntos Municipales de la Cámara de Representantes del 26 de agosto de 1993 sobre el sustitutivo al P. de la C. 627, indicó que la Asamblea Municipal es el cuerpo rector que dicta la compensación que recibe el alcalde y que

"históricamente, dicho cuerpo ha demostrado prudencia y justicia al aprobar dichos salarios a pesar de no contar con disposiciones específicas bajo las anteriores leyes de aplicación a los asuntos municipales". Mencionó, además, que

> [l]a disparidad en los sueldos de los Alcaldes responde a la falta de guías y criterios uniformes que puedan aplicarse por la Asamblea Municipal para determinar el aumento de salario del Primer Ejecutivo. La importancia de las disposiciones que se introducen en la medida sustitutiva permiten que la Asamblea Municipal evalúe la capacidad fiscal del municipio para compensar adecuadamente al Alcalde tomando en consideración el **presupuesto, la población, la complejidad de las funciones, las responsabilidades del Primer Ejecutivo y el costo de vida. Este último, es un dato indispensable que deberá suplir la Junta de Planificación a las Asambleas [é**nfasis suplido].
>
> Primer Informe de la Comisión de Asuntos Municipales de la Cámara, Sueldos de los Alcaldes, páginas 7-9.

Del mismo modo, el Segundo Informe emitido por la Comisión de Asuntos Municipales de la Cámara de 9 de mayo de 1994, consideró los mismos factores. No obstante, añadió que "además, se dispone que cualquier aumento de salario del Alcalde aprobado por la Asamblea, tendrá efectividad expirado el término o cuatrienio en el cual se apruebe la ordenanza". Segundo Informe de la Comisión de Asuntos Municipales de la Cámara, Sueldos de los Alcaldes, página 7. El segundo informe también señaló que se introduce el Artículo 3.012 para "disponer criterios que servirán de guía a las Asambleas Municipales en la determinación de un sueldo razonable y justo para el

Primer Ejecutivo Municipal al amparo, principalmente, de la capacidad fiscal del municipio". También indicó que además de sus escalas salariales, las Asambleas Municipales –hoy conocidas como Legislaturas Municipales– deberán aprobar un reglamento que rija el procedimiento de evaluación, determinación y adjudicación del salario del Alcalde.

Tras hacer un estudio exhaustivo del historial legislativo de la enmienda que implantó el Artículo 3.012 de la Ley de Municipios Autónomos, concluimos que el propósito de la Asamblea Legislativa fue establecer unas guías generales para la consideración de las legislaturas municipales al aprobar los aumentos de sueldo de los alcaldes. Todo ello es conforme con la entonces recién aprobada reforma municipal, la cual, como ya indicamos, tuvo el propósito de conceder mayor autonomía a los Municipios. Es decir, puesto que la Ley de Municipios Autónomos establece que su texto se interpretará de manera liberal y en armonía con la buena práctica de la política fiscal, debemos concluir que la Legislatura Municipal debe cumplir con los criterios guías que establece la ley. Ahora bien, éstos son unos criterios mínimos sugeridos y no una lista taxativa. Concluir lo opuesto sería contrario al propósito que la propia ley expone respecto a su interpretación liberal y a la intención legislativa de proveer más autonomía a los municipios.

El historial legislativo es claro al señalar que, la Legislatura Municipal debe otorgar gran importancia al costo de la vida. La Legislatura Municipal de Añasco consideró esto y lo hizo constar expresamente en su resolución. El Artículo 3.012 parece otorgar flexibilidad a la Legislatura Municipal para evaluar cuáles son los aspectos más importantes en cada municipio y otorga deferencia al juicio que en el pasado ha tenido cada Legislatura Municipal al cumplir con tan ardua encomienda. Queda claro que los criterios expuestos en la ley no impiden que la Legislatura Municipal pueda utilizar otros factores que le ayuden en su evaluación. Es por ello que la ley en nada impide la adopción de otros criterios adicionales. Opinamos que la determinación de si una Legislatura Municipal cumplió o no con los criterios para otorgar un aumento requiere un análisis de razonabilidad.

Establecido que la intención legislativa es que los siete criterios contenidos en el segundo párrafo del Artículo 3.012 son guías para determinar lo que constituye un salario razonable y justo para los alcaldes, concluimos que la Legislatura Municipal de Añasco cumplió con el mandato de la ley[1]. Nos resta

---

[1] En su opinión disidente, el Juez Presidente señor HERNÁNDEZ DENTON señala que es "problemático y peligroso" que los criterios enumerados en el Art. 3.012, supra, sean guías que no impidan que se le aumente el salario a los alcaldes a pesar de la indudable crisis económica y fiscal por la que atraviesa el Gobierno. Toda vez que ese
(continúa...)

determinar si se podía otorgar un aumento al alcalde sin haber aprobado previamente un reglamento para regir los procedimientos de evaluación, determinación y adjudicación del mismo, tal y como dispone el primer párrafo del artículo.

### III

El legislador creó la O.C.A.M. mediante la Ley de Municipios Autónomos. Esa oficina tiene la responsabilidad principal de asesorar y aprobar reglamentación con el propósito de asegurar la aplicación de los procedimientos contables generalmente aceptados, el cumplimiento con las normas de la Oficina del Contralor de Puerto Rico y la corrección de prácticas que constituyen fuente de señalamientos administrativos y contables. Art. 19.001, 21 L.P.R.A. sec. 4901. Además, el Artículo 19.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4902 (a), (b) y (q), dispone que la O.C.A.M. tiene la función y responsabilidad, entre otras, de: (1) reglamentar, asesorar y dar asistencia técnica y

---

es el lenguaje preciso que surge del historial legislativo, nos parece que la objeción de la disidencia no es a esta Opinión sino al Art. 3.012. Al respecto, basta señalar que es la Asamblea Legislativa "la que luego de considerar todos los factores envueltos incluyendo el impacto económico,..." debe pasar juicio sobre la sabiduría o defectos del Art. 3.012. Torres García v. F.S.E., 111 D.P.R. 469, 474 (1981). Si el legislador logró poco con esa ley, como sostiene la disidencia, en manos del legislador también está modificarla. "Nuestra función es interpretar la ley y no juzgar su bondad o sabiduría". Famania v. Corp. Azucarera de P.R., 113 D.P.R. 654, 657-658 (1982), citado en Mun. Trujillo Alto v. Cable TV, 132 D.P.R. 1008, 1019 (1993).

profesional a los municipios en las materias relacionadas con su organización, administración, funcionamiento y operación; (2) reglamentar, asesorar y prestarle ayuda técnica a los municipios en la preparación y presentación del proyecto de resolución del presupuesto general de ingresos y gastos; y (3) evaluar las leyes aplicables a los municipios y someter a la legislatura sus recomendaciones sobre las acciones legislativas que estimen deben adoptar. 21 L.P.R.A. sec. 4902(a), (b) y (q). Es por todo lo anterior que los apelados entienden que la interpretación de la O.C.A.M. es vinculante.

El Tribunal de Primera Instancia acogió la moción de sentencia sumaria que presentó el Municipio de Añasco, y concluyó que la interpretación de la O.C.A.M. era la norma jurídica aplicable a los municipios cuando se aprobó la Resolución Núm. 15. Cuando se aprobó el aumento del alcalde de Añasco, la O.C.A.M. ya había interpretado que la Ley de Municipios Autónomos no requería la aprobación previa del reglamento. Por tal razón, el foro primario determinó que no procedía el recobro del aumento de sueldo del alcalde por tratarse de un "error en la aplicación e interpretación del Derecho". El Tribunal de Apelaciones confirmó esa determinación.

Indudablemente, la Ley de Municipios Autónomos requiere la adopción de un reglamento para regir los procedimientos de evaluación, determinación y adjudicación de un aumento de sueldo al alcalde. Esto

surge de la letra clara de la ley. Es por ello que la interpretación de la O.C.A.M. no puede impartirle validez a un aumento de sueldo que se realizó sin cumplir con la ley. Las opiniones de la O.C.A.M. solamente tienen fuerza persuasiva para los municipios.

A modo de ejemplo, debemos evaluar el trato que este Tribunal otorga a las Opiniones del Secretario de Justicia. Hemos señalado en varias ocasiones que las Opiniones del Secretario de Justicia son de carácter persuasivo y no obligan a los tribunales. Es más, en San Gerónimo Caribe Project v. A.R.Pe, 174 D.P.R. 640, 672 (2008), indicamos lo siguiente:

> En cuanto al efecto de las Opiniones del Secretario de Justicia a nivel interno de las agencias del Ejecutivo, se han elaborado teorías que le adscriben un carácter consultivo, no mandatorio, por lo que –teóricamente– el recipiente de la misma no viene obligado a seguir sus lineamientos. Sin embargo, por tratarse de opiniones oficiales del funcionario ejecutivo de mayor jerarquía encargado de la administración de la justicia, en realidad son de un gran valor persuasivo. Véase, C.I. Gorrin Peralta, Fuentes y proceso de investigación Jurídica, Ed. Equity Pub. Co., 1991, pág. 258.

> Sobre el particular, cabe destacar que una mayoría de las cortes estatales en Estados Unidos entiende que, lejos de ser mandatorias, las opiniones del Secretario de Justicia constituyen guías para las agencias del gobierno en ausencia de una determinación judicial.

Por las mismas razones, no nos cabe duda de que la interpretación de la O.C.A.M. no tiene carácter vinculante. Sin embargo, tampoco dudamos de que la asesoría de la O.C.A.M. es crucial en aspectos fiscales.

Incluso, estamos convencidos de que la Legislatura Municipal de Añasco interpretó erradamente la Ley de Municipios Autónomos al concluir que no era necesaria la aprobación del reglamento previo a la concesión del aumento al alcalde. La Legislatura Municipal confió en la interpretación de la O.C.A.M. y eso la llevó a un juicio equivocado. En conclusión, la Resolución Núm. 15 fue otorgada sin cumplir con el requisito del reglamento exigido por la Ley de Municipios Autónomos.

IV

Procedemos ahora a atender si procede que el entonces Alcalde de Añasco devuelva lo que indebidamente se le pagó.

Como se sabe, el Alcalde recibió sumas de dinero relacionadas al aumento de sueldo que fue concedido indebidamente. En aquel momento se le pagó al entonces Alcalde en la confianza y bajo la creencia de que se estaba cumpliendo con una obligación válida. Todas las partes suponían en aquella fecha que el Alcalde tenía derecho a recibir el aumento de sueldo. Esa retribución se trató, claramente, del cobro de lo indebido.

El Artículo 1795 del Código Civil, 31 L.P.R.A. sec. 5121, recoge la doctrina del cobro de lo indebido y establece:

> Cuando se recibe alguna cosa que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla.

Hemos reconocido que para que se configure la doctrina del cobro de lo indebido es necesaria la concurrencia de tres requisitos: (1) que se produzca un pago con la intención de extinguir una obligación; (2) que el pago realizado no tenga una justa causa, es decir, que no exista obligación jurídica entre el que paga y el que cobra, o si la obligación existe, que sea por una cuantía menor a la pagada; y (3) que el pago haya sido hecho por error y no por mera liberalidad o por cualquier otro concepto. Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 566 (1998).

Ahora bien, este Tribunal adoptó en Arandes v. Báez, 20 D.P.R. 388 (1914), la distinción entre el error de hecho y el error de derecho. Es norma vigente que en la doctrina del cobro de lo indebido solo el error de hecho, y no el de derecho, da lugar a la obligación de restituir. Sepúlveda v. Depto. de Salud, supra, pág. 567; Aulet v. Dept. Servicios, 129 D.P.R. 1 (1991).

En Sepúlveda este Tribunal por primera vez definió que el error de derecho es

> [a]quel en el que incurre quien actúa sin ajustarse a lo dispuesto por una norma jurídica vigente. En el contexto del cobro de lo indebido, comete error de derecho quien comete un pago bajo la creencia de que el mismo le es exigible en derecho, bien por desconocimiento de la norma que lo descarga del pago, bien por una interpretación errónea del derecho aplicable.

> Id., pág. 568.

Asimismo, explicamos que el error de hecho se refiere "a quien obra a base de unos hechos que no son los verdaderos". Id. También indicamos que "debemos entender que se cometió un error de hecho cuando, aun conociendo los hechos verdaderos, se produce una equivocación meramente formal o de trámite". Ello es lo que tradicionalmente se conoce como error humano. Id. Ejemplo de esto es un error matemático. Con estas definiciones este Tribunal entendió que se eliminaría la duda de cuáles son los elementos de la doctrina del cobro de lo indebido. Incluso, explicamos entonces sobre quién recae la carga de la prueba al utilizar esta doctrina.

Como vemos, la doctrina del error de derecho exime a la persona que recibió el pago indebido de la devolución de lo pagado. Incluso, en Aulet v. Depto. Servicios Sociales, supra, pág. 48, indicamos que "ante el error de derecho no procede la devolución de lo indebidamente pagado, aun cuando se trate de fondos públicos". Véase, A.C.A.A. v. Bird Piñero, 115 D.P.R. 463, 467 (1984); y Cartagena v. E.L.A., 116 D.P.R. 254, 257 (1985).

Para la adopción de esta distinción, bajo la doctrina del cobro de lo indebido, se utilizó como fundamento la jurisprudencia del Tribunal Supremo de España y varios tratadistas españoles que interpretaban de esa manera el Artículo 1895 del Código Civil Español, equivalente al Artículo 1795 del Código Civil de Puerto Rico, supra. Sin embargo, esta distinción fue abandonada

en la jurisprudencia española a partir de la Sentencia de 7 de julio de 1950. En el caso de Sepúlveda la parte apelante nos solicitó que adoptáramos la nueva posición y que revocáramos toda la jurisprudencia relativa a que solo el error de hecho, y no el de derecho, permite la devolución de lo pagado indebidamente. En aquella ocasión no acogimos la petición porque el caso se trataba de una controversia sobre un error de hecho. Véase, Sepúlveda v. Depto. de Salud, supra, pág. 567, nota 8.

Hoy tenemos la ocasión para poner nuestra jurisprudencia al día con la corriente doctrinal más moderna. La Sentencia del Tribunal Supremo de España de 7 de julio de 1950 dicta, en lo pertinente, que

> [e]l artículo 1895, de cuyo cumplimiento se trata, no distingue entre el error de derecho y el error de hecho limitándose a declarar que cuando se recibe alguna cosa que no había derecho a cobrar y que por error ha sido indebidamente entregada surge la obligación de restituirla, y así es justo que sea, pues de otro modo vendría a sancionar un enriquecimiento injusto fundado en el error ajeno.

> Sentencia del 7 de julio de 1950, Aranzadi Núm. 1237, (1950), Tomo XVII, pág. 743.

> Sobre este particular, nos indica Puig Brutau que:

> Tanto García Goyanes, al comentar el art. 1895 del Proyecto de 1851, como Benito Gutiérrez, sobre la base de las Partidas limitaban la repetición al caso del error de hecho, opinión que siguió la doctrina posterior al Código. Pero más tarde, De Buen, Pérez y Alguer, etc. han sostenido que el derecho de repetición es procedente tanto si el error es de hecho como de derecho (es decir, tanto si recae sobre un acontecimiento como sobre una disposición legal), pues el art. 1895 no distingue y el antiguo artículo 2 (véase en la actualidad el

6.-1) no es aplicable al caso. Es el criterio que prevalece en la actualidad.

J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosh, 1983, T.II, Vol. III, pag. 36.

Opina Díez Picaso que "la doctrina moderna entiende, con mayor acierto, que la ignorancia de la ley como excusa del cumplimiento de la misma y el error o la ignorancia sobre la ley como motivo de irregularidad de contrato, se mueven en órbitas distintas". L. Díez Picaso, Fundamentos del Derecho Civil Patrimonial, pág. 211, (6ta ed. 2007). Con ello avala la nueva postura que interpreta que el derecho de repetición es procedente tanto si el error es de hecho como de derecho.

Del mismo modo, el Profesor Godreau ha realizado expresiones en las que criticó el caso de Sepúlveda por reiterar la doctrina vigente y no acoger la nueva corriente española, en particular en lo referente al Estado y sus fondos. Expresó:

Más aún, me parece que la vieja teoría [refiriéndose a la vigente en P.R.] de que si se trata de un error de derecho, a saber, la interpretación errónea de la ley o de los reglamentos, ello elimina el deber de restituir, no puede aplicársele al Estado. Si así fuera, el derecho favorecería la corrupción, permitiéndole a los funcionarios públicos hacer interpretaciones erróneas o discrecionales de las leyes para burlar los limites de los fondos que pueden erogarse y favorecer así a quienes el gobernante o administrador de turno prefiera. Como se trataría de una interpretación errónea de la ley, o como se trataría de realizar pagos en exceso conociendo la verdad de los hechos y de los límites impuestos por ley, el propio Estado vendría impedido de reclamarle al beneficiado

la restitución de lo pagado ilegalmente [énfasis suplido].

M. J. Godreau, Derecho Civil Patrimonial, 68 Rev. Jur. U.P.R. 519, 540-541, (1999).

Como se sabe, existen elementos para descartar un precedente judicial. Éstos son: (1) si la decisión anterior era claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos; y (3) si la cantidad de personas que confiaron en ella es limitada. Pueblo v. Díaz de León, Opinión de 16 de septiembre de 2009, 2009 T.S.P.R. 142, 2009 J.T.S. 145, 176 D.P.R. ___ (2009); Pueblo v. Camacho Delgado, Opinión de 27 de octubre de 2008, 2008 T.S.P.R. 174, 2008 J.T.S. 193, pág. 195, n. 4, 175 D.P.R. ___, ___, n. 4 (2008). Las normas cambian con la intención de asegurar el funcionamiento adecuado del sistema judicial y para eliminar confusiones en derecho. Id. Ello se alcanza, al revocar casos anteriores que son inconsistentes con la actitud predominante. Id.

Como bien señalan los tratadistas, la nueva teoría originada en España resulta más justa. Si el error se alega como excusa del cumplimiento de una ley, éste no puede tomarse en cuenta y la ley debe cumplirse. Por eso, acogemos hoy la corriente moderna, actualizamos el derecho puertorriqueño y excluimos la distinción entre el error de hecho y derecho para efectos de la restitución.

Así pues, quedan derogados de manera prospectiva los casos que contradigan lo aquí resuelto.[2]

V

En este caso, el Artículo 3.012 de la Ley de Municipios Autónomos, supra, establece que la Legislatura Municipal "aprobará" el reglamento que regirá los procedimientos de evaluación, determinación y adjudicación del sueldo del Alcalde. Ese artículo no dispone en cuánto tiempo ese reglamento debe ser aprobado. Por ello, la O.C.A.M. tuvo que emitir una opinión sobre ese particular, en la que sostuvo que el reglamento no era un requisito sin el cual se pudiera aprobar un aumento de sueldo al Alcalde. Al ser así, no cabe otra solución que concluir que ello constituyó un error de derecho. Aquí no se trató de un error de trámite de una agencia sino de una interpretación equivocada sobre un artículo de la Ley de Municipios Autónomos. Como vemos, el error en este caso es de derecho ya que la Legislatura Municipal actuó sin ajustarse a la norma jurídica vigente. Por lo tanto, al amparo de la doctrina del cobro de lo indebido aplica la distinción entre el error de hecho y derecho. Consecuentemente, conforme al derecho vigente hasta hoy, no procedía la devolución del dinero por parte del Alcalde.

---

[2] Véanse, entre otros, Sepúlveda v. Depto. de Salud, supra; Aulet v. Dept. Servicios, supra; A.C.A.A. v Bird Piñero, supra; Cartagena v. E.L.A., supra; American R.R. Co. of P.R. v. Wolkers, 22 D.P.R. 283 (1915); Arandes v. Báez, supra.

Ello era así aunque se trata de fondos públicos. No se trata de una interpretación discrecional de la Legislatura Municipal para favorecer al Alcalde, sino de la opinión legítima de la agencia encargada por ley para asesorar al Municipio acerca de la ley aplicable. Es evidente también que no se trató de una burla o una abrogación de los límites de una ley con intención de favorecer al Alcalde. Por ello, la norma vigente establece que el error de derecho en este caso no amerita la restitución del dinero. La norma moderna acogida en este caso aplicará en casos futuros sobre esta materia. No es posible extenderla retroactivamente a unas partes que confiaron en el estado de derecho vigente al aprobar y desembolsar el aumento de sueldo.

VI

En vista de lo anterior, resolvemos que todo aumento de sueldo a un alcalde debe estar precedido por la aprobación del reglamento que dispone el Art. 3.012 de la Ley de Municipios Autónomos, supra, y que al conceder el aumento, la Legislatura Municipal debe tomar en consideración como guías, los siete criterios esgrimidos en la ley. Además, la Legislatura Municipal podrá utilizar cualquier otro criterio que entienda pertinente y así lo hará constar. Ahora bien, concluimos que la acción por cobro de dinero es improcedente. Conforme a todo lo anterior, confirmamos al Tribunal de Apelaciones, aunque por fundamentos diferentes.

Por último, reiteramos que cuando se recibe alguna cosa que no había derecho a cobrar y que por error ha sido entregada, ya sea por error de hecho o derecho, surge el deber de restituirlo.[3] Ahora bien, como las partes confiaron en el estado de derecho distinto, vigente hasta hoy, lo justo es que la norma que aquí establecemos sea prospectiva.

Se dictará sentencia de conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

---

[3] En su opinión disidente, el Juez Presidente señor HERNÁNDEZ DENTON pregunta: "¿Cuántos otros pagos realizados en abierta violación de la ley constituyen un error de derecho?" La pregunta es irrelevante porque a partir de lo resuelto hoy siempre habrá una obligación de restituir, a diferencia de la norma anterior que la disidencia rechaza derogar.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Peticionarios

        v.

                          AC-2009-070

Hon. Pablo Crespo Torres y
su esposa por sí y en
representación de la
Sociedad Legal de
Gananciales

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 1 de febrero de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma el dictamen del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la que se une la Juez Asociada señora Rodríguez Rodríguez. La Juez Asociada señora Fiol Matta disiente sin opinión escrita.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado de
Puerto Rico

    Peticionarios

      v.                           AC-2009-070

Hon. Pablo Crespo Torres y su
esposa por sí y en
representación de la Sociedad
Legal de Gananciales

    Recurridos

Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON a la cual se une la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ

San Juan, Puerto Rico, a 1 de febrero de 2011.

Hoy, una mayoría de este Tribunal resuelve correctamente que el aumento de salario del Alcalde de Añasco, Hon. Pablo Crespo Torres, fue ilegal. No obstante, la Opinión del Tribunal aplica incorrectamente la doctrina de error de derecho y, en un extenso *dictum*, la revoca innecesariamente. Por entender, que en el caso de autos, la inexistencia del Reglamento exigido por el Art. 3.012 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4112, impedía, sin más, la aprobación del aumento de sueldo en controversia y que toda interpretación ulterior hecha por el Tribunal era innecesaria, ordenaríamos la restitución

del salario pagado ilegalmente. Por lo tanto, respetuosamente disentimos.

I.

El 6 de mayo de 1998, la Legislatura Municipal de Añasco aprobó la Resolución Núm. 15, Serie 1997-1998, a los fines de aumentar el salario del entonces Alcalde, Hon. Pablo Crespo Torres, de $3,000 a $4,000 mensuales. Dicha Resolución se limitó a expresar que "el costo de vida es tan alto" para los funcionarios públicos como el Alcalde, que, "se envuelve en tantas actividades y gestiones para beneficio de su pueblo", que era necesario aumentarle el salario, "[d]e tal forma que las gestiones que realiza dicho Ejecutivo Municipal no vaya[n] en detrimento de su salud económica".

Luego de haber adoptado la referida Resolución, la Legislatura Municipal aprobó el Reglamento para establecer el proceso de evaluación y adjudicación del salario del Alcalde. Es decir, que al momento de aprobar el aumento, el Municipio de Añasco no tenía un reglamento para ello. Por su parte, la Oficina del Contralor de Puerto Rico, tras realizar una auditoría del periodo en cuestión, emitió el Informe M-01-09, mediante el cual opinó que la Legislatura Municipal aprobó este aumento de forma incorrecta.

A raíz de dicho Informe, el Estado Libre Asociado (E.L.A.) demandó al Alcalde en una acción de sentencia declaratoria y cobro de dinero. En síntesis, le requirió que devolviera todas las sumas cobradas a base de la Resolución Núm. 15. A tales efectos, alegó que la Legislatura Municipal

debió haber cumplido con los requisitos que impone el Art. 3.012 de la Ley de Municipios Autónomos, *supra*.

En respuesta, los demandados negaron que el aumento de salario fuera ilegal o *ultra vires*. Esto, pues, según arguyen, al momento de conceder el aumento se cumplió con las directrices y recomendaciones de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.). Así las cosas, el Tribunal de Primera Instancia declaró ha lugar una Moción de Sentencia Sumaria Parcial en contra del E.L.A. y desestimó la demanda. El foro apelativo intermedio confirmó dicha sentencia sumaria.

II.

El Art. 3.012 de la Ley de Municipios Autónomos, *supra*, dispone que:

> **La Legislatura Municipal aprobará, con el voto de dos terceras partes de los miembros del cuerpo, el reglamento que regirá los procedimientos de evaluación, determinación, y adjudicación, del sueldo del Alcalde.**
>
> Al considerar aumentos de salarios para el alcalde, la Legislatura **tomará en consideración**, entre otros, que dicho cuerpo encuentre necesarios, los siguientes criterios:
>
> 1. El presupuesto del municipio y la situación fiscal de los ingresos y gastos reflejados en los informes de auditoría o *single audit*.
>
> 2. La población y el aumento en los servicios a la comunidad.
>
> 3. El cumplimiento con los controles fiscales y administrativos establecidos por O.C.A.M., la Oficina del Contralor y el gobierno federal.
>
> 4. La complejidad de las funciones y responsabilidades del Primer Ejecutivo.

5. El costo de vida, información que deberá suplir la Junta de Planificación a solicitud de la Legislatura Municipal.

6. La habilidad de atraer capital y desarrollo económico al respectivo Municipio.

7. Tomar en cuenta los sueldos devengados por los miembros de la Asamblea Legislativa y los Secretarios del Gabinete Constitucional. *Íd.* (Énfasis suplido).

Como se deduce de lo anterior, el Art. 3.012 antes reseñado impone dos requisitos a la Legislatura Municipal para poder aprobar cualquier aumento de salario a un alcalde. En primer lugar, le requiere a la Legislatura Municipal el deber de aprobar un reglamento que regule dicho proceso y, en segundo lugar, dispone que la Legislatura Municipal **"tomará en consideración"**, como mínimo, los siete criterios enumerados, al momento de aprobar el aumento. Siendo esto una obligación expresa de la Legislatura Municipal, cualquier aumento de salario contrario al referido mandato de ley representa un curso de acción *ultra vires.* No empece a lo anterior, una mayoría de este Tribunal resuelve que considerar los criterios establecidos en el Art. 3.012 no son una obligación de la Legislatura Municipal, sino unas meras guías o sugerencias.

El mencionado artículo fue incluido mediante enmienda a la Ley de Municipios Autónomos a raíz de la aprobación de la Ley Núm. 36 de 13 de abril de 1995. Asimismo, el Informe de la Comisión de Asuntos Municipales del 26 de agosto de 1993 sobre el Sustitutivo del P. de la C. 626, que luego se convirtió en la Ley Núm. 36 de 1995, expresó que el texto

propuesto sobre el Art. 3.012 buscaba que la entonces llamada Asamblea Municipal tuviera unas guías para establecer un salario justo de acuerdo a las capacidades del alcalde y las circunstancias económicas de los municipios. Véase *Íd*. págs. 7-9. A tales efectos, dispuso:

> La disparidad en los sueldos de los Alcaldes responde a la falta de guías y criterios uniformes que puedan aplicarse por la Asamblea Municipal para determinar el aumento de salario del Primer Ejecutivo. La importancia de las disposiciones que se introducen en la medida sustitutiva permiten que la Asamblea Municipal evalúe la capacidad fiscal del municipio para compensar adecuadamente al Alcalde tomando en consideración el presupuesto, la población, la complejidad de las funciones, las responsabilidades del Primer Ejecutivo y el costo de vida. Este último, es un dato indispensable que deberá suplir la Junta de Planificación a las Asambleas. *Íd*. pág. 9.

Por su parte, la O.C.A.M. había circulado varios memorandos a distintos municipios en los que había informado que los criterios del Art. 3.012 de la Ley de Municipios Autónomos, *supra*, no eran una lista concreta de requisitos, sino unas meras guías o factores sugeridos a la Legislatura Municipal y que, de no cumplir con la consideración de alguno de ellos, no se anularía el proceso de aumento. En otras palabras, que de acuerdo a la interpretación legal de la O.C.A.M., llevar a cabo el segundo de los requisitos del Art. 3.012, un análisis previo de los criterios allí dispuestos, no era un requisito *sine qua non* para realizar el aumento. La Opinión mayoritaria extiende equívocamente esa interpretación de la O.C.A.M. al primer requisito del Art. 3.012. Así, sostiene que existía una confusión genuina por

parte de los municipios y la O.C.A.M. sobre la obligatoriedad de cumplir tanto con el requisito de un reglamento previo como con el análisis de los criterios ya mencionados. Al fusionar ambos requisitos de ley, la Opinión mayoritaria llega a la conclusión de que existía un error de derecho sobre todas las disposiciones el Art. 3.012, *supra*. No estamos de acuerdo. Las opiniones legales de la O.C.A.M. podían ser confusas sobre la obligatoriedad de considerar los criterios del mencionado artículo, mas no sobre el requisito de un reglamento previo.

Cabe señalar que surgen serias dudas sobre la razonabilidad de la interpretación dada por el Municipio de Añasco a las opiniones legales de la O.C.A.M. Por ejemplo, la Opinión dirigida al Municipio de Patillas, a la cual hace mención la Opinión mayoritaria, dispone claramente que "puede decretarse el aumento al Alcalde, **certificándose** el haberse utilizado los criterios de la Ley 36". Opinión legal de la O.C.A.M. dirigida a la Asamblea Municipal de Patillas, 5 de julio de 1995. Aun tomando como cierta la confusión genuina que pudo haber tenido la Legislatura Municipal de Añasco sobre la obligatoriedad de tomar en consideración los factores en controversia, nada sugería que no tenían que, como mínimo, expresarlo en la Resolución aumentándole el salario al Alcalde. Peor aún, la O.C.A.M. sostuvo que ello debía certificarse.

De otra parte, la Resolución aprobada por la Legislatura Municipal de Añasco no mencionó ninguno de los criterios que

debió haber considerado. Por el contrario, la Legislatura Municipal aprobó una Resolución en extremo lacónica y despachó el asunto expresando que el costo de vida del Alcalde es alto y que los primeros ejecutivos realizan muchas funciones. Tampoco existía un reglamento según lo exige la ley. Todo lo anterior nos lleva a concluir que aquí no hubo ningún error de derecho, lo que hubo fue una flagrante violación de ley y un aumento de salario ilegal.

Sugerir, como hace la mayoría, que la Ley de Municipios Autónomos meramente invita a las Legislaturas Municipales a tomar en consideración los criterios dispuestos en el Art. 3.012 al momento de aumentar el salario de sus alcaldes es problemático y peligroso. Esa misma mayoría, que recientemente tomaba conocimiento judicial de la "crisis económica y fiscal" que atraviesan las finanzas públicas, hoy le facilita a los municipios que enfrentan profundos déficits presupuestarios aumentar el salario de sus alcaldes sin que medie una evaluación cuidadosa de sus finanzas y del trabajo realizado por el principal funcionario ejecutivo municipal, en la Resolución requerida por ley. Poco lograba el legislador puertorriqueño al añadir aquellos criterios a la Ley de Municipios Autónomos si meramente eran, como sostiene hoy el Tribunal, una mera guía ilustrativa. A nuestro entender, la Legislatura Municipal de Añasco estaba obligada, como mínimo, a consignar en la Resolución mediante la cual aumentó el salario del Alcalde su análisis y conclusión sobre dichos criterios.

Actualmente existen múltiples casos sobre iguales circunstancias ante los tribunales del País por lo que resulta preocupante la ambigüedad de la norma que hoy se pauta. ¿Podrán alegar con éxito esos otros alcaldes que también fueron víctimas de una confusión genuina o un error de derecho? ¿Cuántos otros pagos realizados en abierta violación de la ley constituyen un error de derecho?

III.

En vista de que había una disposición clara y precisa sobre el procedimiento a seguir para aumentar válidamente el salario del Alcalde y que la Legislatura Municipal incumplió tanto con la consideración de los criterios establecidos en el Art. 3.012 como con el requisito de tener un reglamento para dicho propósito, concluimos que el aumento de salario al Alcalde de Añasco se aprobó ilegalmente. Siendo dicho aumento *ultra vires*, sólo correspondía revocar la Sentencia Sumaria Parcial dictada por el Tribunal de Primera Instancia y confirmada por el foro apelativo intermedio, y ordenar la restitución de los salarios pagados ilegalmente. Por ende, disiento respetuosamente del curso de acción seguido por la mayoría de este Tribunal al ensanchar innecesariamente la solución del caso de autos al punto de revocar una doctrina cuando no era necesario abordarla.

A raíz de la opinión emitida hoy por el Tribunal, le corresponde ahora a la Asamblea Legislativa definir el alcance del Art. 3.012 de la Ley de Municipios Autónomos.

Federico Hernández Denton
Juez Presidente